[Commonwealth ex rel. Bressler *v.* Gane.]

| 3 G | 447 |
|-----|-----|
| 19 SC | 632 |

## IN THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

## Commonwealth ex rel. Bressler *versus* Gane.

In cases of imprisonment under Federal authority, *not judicial*, the State and Federal courts have concurrent jurisdiction.

HABEAS CORPUS.

The opinion of the court was delivered by

RYON, J.—This is a writ of habeas corpus addressed to Uriah Gane, allowed and issued June 15th, 1863, upon the petition of Abraham Bressler, setting forth " that he was held in custody by one Uriah Gane ; that he was ignorant of the nature and cause of his detention ; that he has not been guilty of any offence known to the laws for which he could or should be held in custody by Uriah Gane or any one else. That said Gane that day (15th of June) informed your petitioner that he had a warrant for his arrest, and asked him to consider himself in custody, and this is all he knows about it."

This writ was served on Gane the same day as appears by the return of the sheriff.

On the 22d of June, the cause came on for hearing, and the counsel on behalf of Gane, and for him, filing his answer, setting up that he was deputy provost marshal of the Tenth Congressional District of Pennsylvania, and that by virtue of a military warrant or order made and signed by C. Tower, provost marshal for the Tenth Congressional District of Pennsylvania, a true copy whereof was annexed to said answer, he did, on the 15th day of June, 1863, arrest the said Abraham Bressler, and held him in safe custody ; that on the 16th day of June, 1863, he did convey the said Bressler to the city of Philadelphia, and on the 17th of June, 1863, he did deliver the said Bressler to the civil authorities, viz : to Wm. Millward, marshal for the Eastern District of Pennsylvania, in obedience to the 25th section of the act of Congress, entitled " An act for enrolling and calling out the national forces and for other purposes, approved the 3d day of March, 1863," whereby he put it wholly out of his power to have the body of the said Abraham Bressler before the President Judge, &c. After delivering to the said marshal the said Bressler as aforesaid, he never did restrain him from his free and full liberty ; and further, that after he had delivered the said Bressler to the said marshal as aforesaid, the District Court of the United States, in and for the Eastern District of Pennsylvania, issued a bench warrant against the said Bressler and others, to arrest the said Bressler and others, to answer the charge set forth in said warrant, a copy of which and marshal's return are thereunto annexed."

(Signed)        U. GANE.

Upon the hearing of this return and the arguments of counsel in relation thereto, the court directed a rule to be granted upon the said Gane, to show cause why an attachment should not issue against him for contempt of court, by reason of the facts stated in the return and for disobedience to the writ of habeas corpus.

Upon the return of the rule, Gane made answer, First. That he was deputy provost marshal for the Tenth Congressional District of Pennsylvania, duly appointed by the provost marshal, &c.

Second. That when the said writ of habeas corpus was served upon him

[Commonwealth ex rel. Bressler *v.* Gane.]

by the sheriff of Schuylkill County, he held the said Bressler in custody under an order or warrant issued by the provost marshal, dated the 8th of June, 1863, charging him, the said Bressler, with an offence against the laws of the United States.

Third. That between the time of the service of the said writ of habeas corpus upon him and the time fixed by the court for return thereof, he delivered said Bressler to the civil authorities of the United States, in accordance with the direction of the act of Congress of the 3d of March, 1853, and in obedience to the positive order of his superior officer, Captain Charlemange Tower, Provost Marshal of the United States.

Fourth. That he did not intend any disrespect to the said court, and did not commit any contempt against the said court.

Upon the hearing upon the answers, the counsel on the behalf of Gane contended that the return ousted the jurisdiction of this court upon the ground, as they alleged, that the return shows judicially to the court that the prisoner was in the custody of another and independent jurisdiction, and therefore this court could proceed no further : or in other words, it is a claim of exclusive jurisdiction in the United States courts, and a denial of any jurisdiction to State courts by habeas corpus to inquire into the cause of detention when that imprisonment is by an officer of the United States, by color or under pretext of the authority of the United States. The Constitution of the United States, treaties and laws made in pursuance thereof, are the supreme law of the land, and are binding alike on State and Federal courts, and if there is anything in either to deprive a State court of concurrent jurisdiction to inquire by habeas corpus into the cause of imprisonment when that imprisonment is by a Federal officer, the State courts have and will recognize the binding force of such supreme authority.

The Constitution of the United States was formed by thirteen States yielding up portions of their sovereignty for the benefit of the whole. Originally and before the adoption of the Constitution of the United States, each State was a sovereign and independent nation, possessing all the sovereign rights and immunities of any other nation.

The Constitution formed the Union of the States : "it is the bond," and within the powers granted by the States and the people thereof, and contained in that Constitution, it is the supreme law of the land, and contains all the powers exercisable by or under the Government of the United States. The States are therefore sovereign and independent except so far as they and the people thereof have voluntarily surrendered their sovereignty and independence, in the Constitution, for the benefit of the Government of the United States, and the adoption of the Constitution by the States was the creation by them of the Government of the United States, invested with such powers as were granted and with no others; and expressly declaring that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

The Constitution, in article 1st, section 9th, second clause, provides that "the writ of habeas corpus shall not be suspended unless when in case of rebellion or invasion the public safety may require it."

There is neither enactment nor recognition of the privilege of the writ of habeas corpus in the Federal Constitution except in the clause above quoted, and it means simply what is expressed, that this writ or privilege (recognized from time immemorial as the great and indefeasible remedy of the citizen against illegal or arbitrary imprisonment under the common law which was brought to this country by our ancestors, and, at the time of the adoption of the Constitution, was incorporated into the jurisprudence of every State) could not be suspended, or the citizen could not be deprived of the privilege of the writ, "unless when in case of rebellion or invasion, &c."

[Commonwealth ex rel. Bressler *v.* Gane.]

It is a restriction—a limitation upon the power of the general government, not to be exercised only in the cases mentioned. Rawle on Constitution, 115–117. And as every limitation or restriction or qualification of the privilege necessarily suspends it to that extent, it would be difficult indeed to understand how the privilege could be limited or restricted, or its common law rigor in any way lessened unless when authorized by the exigencies provided for, without coming in conflict with the Constitution.

The writ at common law is issued in "all cases of illegal confinement." It is the appropriate remedy to ascertain whether any person is rightfully in imprisonment or not, and the causes of his confinement; and if no sufficient ground of detention appears, the party is entitled to his immediate discharge. It is therefore justly esteemed the great bulwark of personal liberty. This writ is beneficially construed, and is applied to every case of illegal restraint whatever it may be. Story on Constitution, 1339.

This privilege is "reserved to the States respectively, or to the people," in the Federal Constitution, by restricting the power of the government of the United States from suspending it, unless when great public exigencies may demand it, but this provision is a guaranty that the privilege shall be preserved "to the States respectively or to the people" in the new governmental relations created by the adoption of the Constitution.

But the argument is, that the jurisdiction of the Federal courts is exclusive in cases of imprisonment under or by pretext of authority of the United States, and relief can only be had by habeas corpus in the Federal courts, and in that lies the great evil. The courts of the United States have no common law jurisdiction over this writ: and they possess no power to issue the writ of habeas corpus except what they derive by positive congressional enactment. *Ex parte Bollman & Swartwout*, 4 Cranch U. S. R. 75, decides the point in the following language: This was an application before the Supreme Court of the United States for a writ of habeas corpus. Mr. Chief Justice Marshall said: "As preliminary to any investigation of the merits of this motion, the court deems it proper to declare that it disclaims all jurisdiction not given by the Constitution or by the laws of the United States. Courts which originate in the common law possess a jurisdiction which must be regulated by common law until some statute shall change their established principles, but courts which are created by written law (Constitution or act of Congress) and whose jurisdiction is defined by written law cannot transcend that jurisdiction. It is unnecessary to state the reasoning on which this opinion is founded, because it has been repeatedly given by this court, and with the decisions heretofore rendered on this point, no member of the bench has ever for an instant been dissatisfied. The reasoning from the bar in relation to it may be answered by the single observation that for the meaning of the term habeas corpus, resort may unquestionably be had to the common law; but the power to award the writ by any of the courts of the United States must be given by written law."

Again the chief justice remarks: "It may be worthy of remark that this act (1789) was passed by the first Congress of the United States, sitting under a constitution which had declared 'that the privilege of the writ of habeas corpus should not be suspended unless when in cases of rebellion or invasion the public safety may require it.' Acting under the immediate influence of this injunction, they must have felt with peculiar force the obligation of providing efficient means by which this great constitutional privilege should receive life and activity, for if the means be not in existence the privilege itself would be lost, although no law for its suspension should be passed."

It will be observed that the words "written law" are used in the sense of "*lex scripta*," and in contradistinction to "*lex non scripta*" or the common law.

If the authority to issue the writ had never been conferred on the United

[Commonwealth ex rel. Bressler *v.* Gane.]

States courts by Congress, or if Congress should repeal the act giving to those courts jurisdiction, which Congress could do, as the power to repeal is co-extensive with the power to enact, a citizen of Pennsylvania or any of the States, guilty of no crime, and illegally imprisoned under color of authority of the United States, must seek relief through the State tribunals by habeas corpus, or have none at all. If the power to issue the writ had been withheld, or should be taken away from those courts, that would not be a suspension of the privilege in a constitutional sense; it would be a denial or abrogation of the right in the courts of the United States; and if in such case the State courts could not give relief to her citizens arrested and detained under color of authority of the United States, if such detention were illegal, then instead of a free government we would have the worst of despotisms. The privilege would be worse than "suspended." Congress may limit the right of the Federal courts to issue the writ except in term time, which may also be regulated to be once in six months or a year, or they may limit the writ to some particular cases or to some particular class of persons, and hence the privilege denied, or in a word, Congress has full power over the right in the Federal courts.

But the power of the State courts over the writ is independent of Congress. "The State courts are not in any sense of the word inferior courts except in the particular cases in which an appeal lies from their judgment to the United States Supreme Court, and in these cases the mode of proceeding is particularly prescribed, and is not by habeas corpus. They are not inferior courts, because they emanate from a different authority and are the creature of a distinct government." *Ex parte Bollman,* 4 Cranch 75. Therefore while Congress may regulate the power of the Federal courts, they cannot interfere with this writ in the State courts except in the manner provided for in the Constitution of the United States.

To preserve this right, which existed originally only in the State courts, to inquire by habeas corpus into all cases of imprisonment within their territorial jurisdiction, was the reason the provision was inserted in the Constitution; and for the preservation of that great privilege that provision is a sacred constitutional guaranty. It was never intended to trust this privilege, esteemed by Blackstone as "the bulwark of the English Constitution," and by Story as the great bulwark of personal liberty, and the only refuge of the citizen against the encroachment of power, to the uncertainty and caprice of congressional action, and having been guarantied by the Constitution, this right (of State jurisdiction) is carried along with that instrument and adopted and extended to all the new relations created thereby, and it stands under the Constitution of the United States as it was under the common law of English-America, an indefeasible privilege, above the sphere of ordinary legislation. And the Constitution must be construed so as to be consistent with itself; but what would the constitutional provisions that no person should "be deprived of life or liberty without due process of law," or "that the accused should enjoy a speedy and public trial," or "that no person should be held to answer for a capital or other infamous crime unless on a presentment or indictment of a grand jury," avail without the privilege of the habeas corpus. In point are the remarks in Rawle on the Constitution, 118. "If this provision (that the writ should not be suspended, &c.) had been omitted (from the Federal Constitution), the existing power under the State governments, none of whom are without it, might be questioned, and a person imprisoned on a mandate of the President or other officer under color of lawful authority derived from the United States, might be denied relief. But the judicial authority, whether vested in a State judge or a judge of the United States, is an integral and identified capacity, and if Congress never made any provision for issuing writs of habeas corpus, either the State judges must issue them or the individual be without redress. The Constitution seems to have secured this benefit to the citizen by the de-

[Commonwealth ex rel. Bressler *v.* Gane.]

scription of the writ, and in an unqualified manner admitting its efficacy, while it declares it shall not be suspended unless when in case of rebellion or invasion the public safety shall require it."

Again : By the grant of the power of the courts of the United States, to decide certain cases, the powers of the State courts are not suspended, but are exercised concurrently, subject to an appeal to the courts of the United States. The constitutional provision that " the judicial power of the United States shall extend to all cases in law and equity arising under this Constitution, the laws of the United States, and the treaties made, or which shall be made under their authority," has never been held to prohibit the exercise of judicial power by the State courts in such cases, and that in those cases where previous to the Constitution the State tribunals possessed jurisdiction independent of national authority, that they can now constitutionally exercise a concurrent jurisdiction. *Martin* v. *Hunter*, 1 Wheaton, 337.

Congress not having undertaken (if indeed it has the power) to make original jurisdiction in such cases exclusive in the Federal courts, the State courts have heretofore exercised it concurrently with the Federal courts, subject only to the final appellate jurisdiction of the Supreme Court of the United States as provided by the judiciary act of Congress.

" Jurisdiction of habeas corpus is granted to the Federal courts and judges only in certain cases ; but it is not by the Constitution or the act of Congress declared exclusive in them ; accordingly the State tribunals exercising a judicial power which they possess independent of national authority, and of which they have not been divested by the Constitution or any law of the United States, have always exercised in these cases a concurrent jurisdiction with the Federal courts. The fact that under the present law of Congress no appeal lies to the Supreme Court of the United States from a decision of a State court in habeas corpus proceeding, involving questions which affect the Constitution or laws of the United States, does not deprive the State courts of their jurisdiction, since it is supposed to be competent for Congress to extend the appellate jurisdiction of the Supreme Court to such decisions." Sergt. Con. 287.

The Federalist (see page 473) considered of high authority, and written to induce the adoption of the Constitution, announces this doctrine : " But I hold that the State courts will be divested of no part of their primitive jurisdiction further than may relate to an appeal; and I am even of opinion that in every case in which they were not expressly excluded by the future acts of the national legislature, they will, of course, take cognizance of the causes to which these acts may give birth. That I infer from the nature of judiciary power and from the general genius of the system." See 1 Kent's Com. 390–96 ; 2d 401, Story on Const. pl. 1748 ; Rawle on Const. 205. *Houston* v. *Moore*, 5 Wheaton, 1.

We have seen that the privilege of the writ of habeas corpus was a part of the jurisdiction of the State courts prior to the adoption of the Federal Constitution, therefore the State courts have concurrent jurisdiction, and it is their duty to inquire by habeas corpus into the cause of detention when such detention is by the United States authority. And the foregoing conclusions are sustained by commentators upon the law, and by a chain of judicial decisions covering the whole period from the formation of the present government down to the present time; and the nearer we approach the earlier days of the republic the more emphatic are the authorities in sustaining the right of States to be informed why any of her citizens were imprisoned, and in asserting the right and duty of the States to set them free from all illegal restraint.

The acts of Congress are the supreme law of the land, and yet Judge Story says : " The right of all courts, State as well as national, to declare

[Commonwealth ex rel. Bressler *v.* Gane.]

unconstitutional laws void seems settled beyond the reach of judicial controversy." 2 Story, Com. Sect. 1842 ; 1 Kent, Com. 494.

And so as to judgments rendered by the United States courts. In the case of *Williamson* v. *Burry*, 8 Howard, 540, the Supreme Court of the United States says : " It is a well settled rule in jurisprudence that the jurisdiction of any court or authority over a subject, may be inquired into in every other court where the proceedings in the former are relied upon and brought before the latter by a party claiming the benefit of such proceedings. The rule prevails whether the decree or judgment has been given in a court of admiralty, chancery, ecclesiastical court, or court of common pleas, or whether the point ruled has arisen under the laws of nations, the practice in chancery, or the municipal laws of States."

That these powers in the State tribunals to declare unconstitutional acts of Congress and judgments of the United States courts void, are exercisable upon habeas corpus no one will question. In Rawle on Constitution, 119, after discussing the privilege of the writ, the learned author says :—

"The State courts and the judges possess the right of determining on the legality of imprisonment under either authority"—State or United States authority.

The same conclusion in Kent, 401. After remarking upon the *Ferguson Case*, &c., " but subsequently *The matter of Stacy*, 10 Johns, 328, the same court that declined to exercise the jurisdiction in the *Ferguson Case*, exercised a jurisdiction in a similar case by allowing and enforcing obedience to the writ of habeas corpus. The question was therefore settled in favor of a concurrent jurisdiction in the case, and there has been a similar decision and practice by the courts of other States." In Wharton's Criminal Law, 140 : " Neither of these acts of Congress forbid the employment, in case of the habeas corpus by the State courts, and the consequence has been that in almost all of the States the courts have held that so far as the cause of commitment is concerned, they are at liberty to investigate ; but whether they will look beyond the warrant of commitment when made by any other than a judge of the courts of the United States, and inquire into the facts, is, it is said, a matter of sound discretion to be regulated by the circumstances of the case." See also Serg. Const. Law, 286, *Ex parte Pool et al.*, Nat. Intelligencer, Nov. 10th and Dec. 11th, 1821, where same doctrines are held.

The same doctrine was settled in Maryland in the case of *Emanuel Roberts*, in 1809, 2 Hall's Law Journal, 192. NICHOLDSON, C. J., said : " If the facts as stated in the petition had been supported by evidence, the party detained must have been discharged whether the detention had been by officers of the United States or others, and I would most certainly have held them to bail to answer upon a criminal prosecution.

" No man is more anxious to persevere, nor will more steadily persevere in support of the State authorities than myself. I consider the well adjusted balance between the General and State governments to be essential to the preservation of the blessings of each, and as in the exercise of my public functions I will never suffer the general government or its officers to infringe such of the State rights as are trusted to me, so I hold it to be my duty not to interfere with the rights of the general government. *
* * The power of the State court to examine into the regularity of the proceeding *is only* contended for on the ground that the citizens of the State are entitled to its protection ; that the writ of habeas corpus is all important to secure the liberty of the citizen, and that every man may claim relief under it."

Before the Supreme Court of New York in 1815, a writ of habeas corpus directed to Gen. Lewis, commander of the United States troops at Sackett's Harbor, commanding him to bring up the body of Samuel Stacy, who it appeared had been arrested by Commodore Chauncey on a charge of treason

and delivered to the charge of General Lewis, who held the prisoner in close confinement. General Lewis did not produce the body of the prisoner, but "made return of the facts," and upon motion for an attachment, KENT, C. J., said : "The pretended charge of treason (for upon the facts before us we must consider it as a pretext), without being founded upon oath, and without any specification of the matters of which it might consist, and without any color of authority in any military tribunal to try a citizen for that crime, is only an aggravation of the oppression of confinement. It is the indispensable duty of this court, and one to which every inferior consideration must be sacrificed, to act as a faithful guardian of the personal liberty of the citizen, and to give ready and effectual aid to the means provided by law for its security. One of the most valuable of those means is the writ of habeas corpus, which has justly been deemed the glory of the English law." 10 Johns, 328.

This doctrine is affirmed in the case of *Carlton*, 7 Cow. 461, in 1827, and this authority is exercised now without hesitation by the courts of New York. *United States* v. *Wyngall*, 5 Hill, 16.

In New Jersey, in 1819, the question came before the Supreme Court in the case of the *State* v. *Brearly*, 2 Southard, 555.

SOUTHARD, J. said : "It will require in me a great struggle, both of feeling and judgment before I shall be prepared to deny the jurisdiction of the State, and say that she has surrendered her independence on questions like this : that her highest tribunal for such purposes is incapable of inquiring into the imprisonment of her citizens, no matter how gross or illegal it may be, provided it be by agents of the United States, and under color of their laws."

In New Hampshire, on the petition of habeas corpus by an enlisted soldier, the court said :—

"If the laws of the United States justify the detention of the applicant there is nothing illegal. If they do not, it is not a case arising under the laws of the United States, although it may be under color or pretence of authority by virtue of those laws. But a mere pretence of authority under the laws of the United States is no better than other pretence. It neither confers an exclusive jurisdiction on the courts of the United States, nor ousts the ordinary jurisdiction of the courts of this State. Nor can it make any difference that the illegal imprisonment, if there be one, is by any officer of the United States army. The courts of the United States have no exclusive jurisdiction over their officers. * * * * A return to a habeas corpus, issued by the superior court, setting forth that the petitioner is held as a soldier under an enlistment in the army of the United States, does not oust the court of its jurisdiction, but it is bound to inquire whether the petitioner is lawfully held under the laws of the United States; and if not he is entitled to his discharge." *The State* v. *Dimick*, 12 N. H. 194.

In Massachusetts the question was made in 1814. *The Commonwealth* v. *Harrison*, 11 Mass. Rep. 63. This was a writ of habeas corpus granted at the instance of a master to bring up his apprentice, a minor, who had enlisted in the army. On the trial the counsel for the defendant cited the opinion of KENT, C. J., in the *Ferguson Case*, 9 Johns, 138, that the State courts have no jurisdiction in cases of this kind. The court answered very briefly, but very emphatically :—

"This court has authority, and it will not shun the exercise of it on proper occasions, to inquire into the circumstances under which any person brought before them by a writ of habeas corpus is confined or restrained of his liberty." The prisoner was discharged.

The court exercised the same authority in the case of the *Commonwealth* v. *Cushing*, 11 Mass. 67, and subsequently in 1836, in the case of the

[Commonwealth ex rel. Bressler *v.* Gane.]

*Commonwealth* v. *Downs,* 24 Pick. 227, and in *Sims' Case,* 7 Cush. 285. In 1851 the court recognized the same principle.

In Pennsylvania these principles have been uniformly held and repeatedly enforced by her courts, and if one principle in the law is better settled than another by our courts, and beyond the reach of judicial controversy, it is this right. *Olmstead's Case,* Brightly's Rep. 9, occurred in 1809. Sergeant was held under attachment from the United States District Court. A writ of habeas corpus issued to the United States Marshal, returnable before Tilghman, Chief Justice of the State, and that court, in holding that they had the power to discharge the prisoner, remarks that this "right flows from the nature of our Federal Constitution, which leaves to the several States absolute supremacy in all cases in which it is not ceded to the United States."

*        *        *        *        "When these powers are clearly exceeded, the independence of the States and the peace of the Union demand that State courts should, in cases brought properly before them, give redress.  There is no law which forbids it; their oath of office exacts it, and if they do not, what course is to be taken ?  We must be reduced to the miserable extremity of opposing force to force and arraying citizen against citizen, for it is in vain to expect that the States will submit to manifest and flagrant usurpations of power by the United States, if (which God forbid) they should ever attempt them."

In *Lockington's Case,* before the Supreme Court, Tilghman, Chief Justice, said :  "It is to be observed that the authority of the State judges, in cases of habeas corpus, emanates from the several States, and not from the United States.  In order to destroy their jurisdiction, therefore, it is necessary to show, not that the United States have given them jurisdiction, but that Congress possesses and have exercised the power of taking away that jurisdiction, which the States have vested in their own judges.  Our act of assembly directs that in all cases where any person, not being committed or detained for any criminal or supposed criminal matter, shall be confined or restrained of his liberty, under any color or pretence whatsoever, shall be entitled to a writ of habeas corpus.  Now it is no answer to this law to say, that, being made before the present Constitution of the United States was established, it could not be intended to apply to cases arising under the Constitution.  The 'people of Pennsylvania still remain citizens of the commonwealth, as well as of the United States ; and it is of as much importance to them to be relieved from unlawful imprisonment, under color of authority derived from the United States, as from any other imprisonment.  When the present Federal Constitution was adopted, the people were not easy until they had obtained an amendment, declaring that the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, were reserved to the States respectively, or to the people.  A writ of habeas corpus must, therefore, be issued in all cases where the right to issue it has not been given up to the United States. That this right has not been given up was my opinion delivered in the case of Olmstead, where I assigned reasons which I shall not now repeat.  But this is not all.  It is a principle well established, that even in cases where Congress might assume an exclusive jurisdiction, the authority of the States remains until such jurisdiction is assumed."

Notwithstanding these express determinations and subsequent practice in conformity to them, the question was renewed in the Supreme Court in 1847, in the case of the *Commonwealth, ex rel. Webster* v. *Fox,* 7 Barr, 336, and *Ferguson's Case,* 9 Johns. 229, again presented, when COULTER, J., in delivering the opinion of the court, said :—

"In Pennsylvania the jurisdiction of the State judges and State courts has not before been doubted; and from the case of *Commonwealth* v. *Murray,* 4 Binn. 487, down to the present time, numerous cases have occurred

[Commonwealth ex rel. Bressler *v.* Gane.]

in which it has been exercised, some of them reported and many more unreported. Our statute of 18th February, 1785, section 13, provides that the writ shall issue in all cases where any person, not committed or detained for any criminal or supposed criminal matter, shall be confined or restrained of his liberty, under any color or pretext whatsoever; and imposes the like penalties for not granting the writ as are imposed by the previous sections where the person is committed or detained for any criminal or supposed criminal matter. This is in accordance with the principles of the common law, by the provisions of which the writ of habeas corpus *ad subjiciendum* is the prerogative writ of the citizen, the safeguard of his person and the security of liberty. No matter how or where the chains of his captivity were forged, the power of the judiciary of this State is adequate to crumble them to dust if an individual is deprived of his liberty contrary to the law of the land."

These are some of the adjudications of the highest courts of the States. There are numerous other decisions by the State courts referred to, and by the highest courts of other States, all affirming the right of State courts to try the legality of the imprisonment under color of authority of the United States; and this right has been exercised almost daily by the State courts within the last two years, and many of whose decisions are to be found in the legal papers issued during that period.

The opinion of Chief Justice Kent, in *Ferguson's Case*, 9 Johns. 229, stands almost alone. This opinion was given before a full bench, and four judges sitting on the bench with the Chief Justice, in a dissenting opinion by Thompson, Judge, expressly dissented from the conclusion of the Chief Justice, that the court had no jurisdiction. But subsequently in the case of *Stacy*, 10 Johns. 328, the same court, Kent, Chief Justice, affirmed the right of that court to inquire into the imprisonment by color of authority of the United States, and by attachment against General Morgan Lewis enforced this right.

In a case reported in the Law Journal, 438, in 1850; in the charge of Mr. Justice Nelson to the grand jury in 1851 of the Circuit Court for the Southern District of New York, and by Mr. Justice McLean in *Norris v. Newton*, 5 McLean, 92, the right was denied. Hurd on Habeas Corpus, 166, in summing a review of the various decisions, says:—

"In some of the inferior courts of the United States, the power has been denied; but in most of them where the question has arisen, the power to issue the writ has been conceded, but the jurisdiction under it has been claimed by them to be more circumscribed than the State courts have held it to be.

"It may be considered settled, that State courts may grant the writ in all cases of illegal confinement under the authority of the United States. "And the weight of authority clearly is that they may decide as to the legality of the imprisonment; and discharge the prisoner if his detention be illegal, though the determination may involve questions of the constitutionality of acts of Congress, or of the jurisdiction of a court of the United States. Their right to proceed to the extent of declaring an act of Congress constitutional, or of pronouncing a judicial act of a court of the United States void for want of jurisdiction, has been denied by some of the District and Circuit Courts of the United States, but the denial does not appear to be supported by satisfactory reasons or authority.

On the hearing upon the rule, the only cause cited by the counsel in behalf of Gane was *Ableman* v. *Booth*, 21 Howard, 506. As this case in the latitude of expression of the learned Chief Justice, in his opinion, is construed to decide against the right of a State court to inquire into the legality of imprisonment under color of authority of the United States, we propose to examine the case and ascertain whether it is authority to the extent claimed.

[Commonwealth ex rel. Bressler *v.* Gane.]

The defendant in error, Booth, had been committed by a United States commissioner in Wisconsin, for aiding in the escape of a fugitive slave. A justice of the Supreme Court of the State, upon application made, issued a writ of habeas corpus for him, and upon hearing, held the detention to be illegal, and ordered his discharge.

The case was removed to the Supreme Court of the State, and the judgment of the justice below affirmed; and from that court, by proper proceedings, carried to the Supreme Court of the United States.

After the discharge of Booth he was indicted by the grand jury of the District Court of the United States, for the offence for which he had been committed by the United States commissioner. Upon the trial he was convicted, and sentenced to be imprisoned for one month, and pay a fine of $1000 and costs, and to remain in custody until the sentence was complied with.

Afterward, upon application, the Supreme Court of Wisconsin granted a writ of habeas corpus for Booth, and upon the hearing thereof " decided that the imprisonment was illegal, and ordered and adjudged that Booth be, and he was by that judgment forever discharged from that imprisonment and restraint, and he was accordingly set at liberty."

This action of the Supreme Court of Wisconsin was, also, by proper proceedings, brought before the Supreme Court of the United States, and the case of *Ableman* v. *Booth*, and *United States* v. *Booth*, are the decision of the Supreme Court of the United States upon the several orders or judgments of the Supreme Court of Wisconsin.

Now see what the questions before the court were: The court had, upon habeas corpus, discharged one who had been tried by a United States commissioner, found guilty, and committed to prison charged with an offence against the United States.

The State court had also, upon habeas corpus, discharged one who had been indicted, tried, convicted, and sentenced by a competent United States Court, guilty of a violation of a criminal law of the United States.

The only question then before the court was whether, upon habeas corpus, the State court could review, reverse and set aside a judgment of the United States Court having jurisdiction of the subject matter and of the person? This is the only question that was decided—the only question upon which the case can be cited as authority. For it is a familiar rule that a court can decide only such questions as arise in the case before them or arise from the facts of the case.

This case was that of a contest between the State court and the United States court and their respective and relative powers touching the judgment rendered—not whether there was concurrent jurisdiction—but whether the State court may review and revise the judgment of the Federal court in the way it was done, or at all. That this was the understanding of Chief Justice Taney, is clear from his own statement of the proposition —he says, " The supremacy of the State courts over the courts of the United States, in cases arising under the Constitution and laws of the United States is now for the first time asserted and acted upon in the Supreme Court of a State." And the result arrived at was a denial of such right. With that question we have nothing to do, nor with the conclusion reached.

The prisoner in the case at the bar was not held by virtue of any legal process, nor was he in the custody of a court of the United States. He was held by a Deputy Provost Marshal on the warrant of the Provost Marshal of this district, for an alleged interference with the enrolment— an officer possessing none but very limited ministerial powers without any judicial functions, with no power to hear and commit as a committing magistrate, and therefore the return of Gane shows a state of facts not covered at all by the points decided by the case cited. The case of *Ableman* v. *Booth*, decides that when a person is held to appear and answer before a

[Commonwealth ex rel. Bressler v. Gane.]

United States court, or when a person has been convicted before a court of the United States having jurisdiction of the subject matter and of the person and sentenced, the judgment cannot be reviewed and revised by a State court. The question whether on habeas corpus issued by a State court or judge to an officer of the United States, such officer was bound to produce the prisoner held by the authority of the United States, before the State court or judge issuing the writ, was not a point at issue in the case, because the prisoner Booth had been brought before the State tribunal of Wisconsin and discharged, and this discharge was decided to have been wrong. All therefore that was said about the return and production of the body upon habeas corpus, was extrajudicial and mere dictum; and is not authority for this or any other court, however much we may respect the private opinions of the learned Chief Justice who delivered the opinion in the case. But if the point was properly decided, it cannot have the latitude claimed.

In the case at the bar, Bressler was not committed for trial for any offence against the law, nor was he held by final process of any court, but was held by an officer whose duties are purely ministerial, or a military warrant or order of the provost marshal. It will be seen that there is not an element in the case at bar in common with the case of *Ableman* v. *Booth.*

"It is not claimed that the writ of habeas corpus in the hands of a State court can be used to defeat the exercise of a jurisdiction already begun by a Federal court or judicial officer, and still pending; nor that the State courts have any power to exercise a corrective jurisdiction over any Federal court or judicial officer. But when the detainer is not under judicial process, a State court may discharge the person detained, if the restraint be manifestly illegal. And when the detainer is under legal process of a Federal court or officer which is manifestly void for want of jurisdiction and the question of jurisdiction has not been the subject of express adjudication in the particular case, a State court may discharge the prisoner provided such discharge will not in any manner interfere with the right and duty of the Federal court or officer to proceed to the final disposition of a pending case or investigation." Hurd on Habeas Corpus, 202.

The right of the State courts to inquire into the cause of imprisonment is inherent in the States, a right reserved in the Constitution and by that instrument guarantied. It is an imprescriptible and constitutional right of the citizen to appeal to the State courts, and the duty of those courts to protect the citizen against illegal imprisonment. When that imprisonment is by United States authority and is shown by the return to be legal, and the prisoner is not able to disprove the fact, the case is at an end in the State courts, and the prisoner should be remanded to the proper jurisdiction; but if the imprisonment is illegal, it is the duty of the State court to discharge and free from such illegal restraint, and this does not conflict with the courts of the United States, for if the imprisonment is legal, their jurisdiction is not interfered with, but if illegal, they have no jurisdiction over the case, and therefore the State court does not conflict with any other jurisdiction by discharging the prisoner from such illegal restraint.

These premises being sustained as they are by an unbroken current of decisions from our earliest existence as States, it is perfectly apparent that the courts have a right to demand a full return to the writ in accordance with the provisions of the act of 1785, which requires the production of the body, with the cause of detention. If the officer having the party in custody may refuse to produce him in court in obedience to the writ, the act of assembly becomes a nullity, and the court is rendered powerless to determine the legality of the imprisonment. This high judicial power to determine the legality of the imprisonment involving the liberty of the citizen, cannot be taken away from the courts by a return of the facts and the refusal to produce the body of the prisoner by a petty officer whom no

[Commonwealth ex rel. Bressler *v.* Gane.]

law of the land has vested with any judicial authority. To determine the legality of the imprisonment is a right and duty of the court issuing the writ, and is a judicial act, but if the doctrine prevails that a return ousts the jurisdiction, because it sets forth detention by another jurisdiction, then the officer making the return usurps the judicial functions of the court to judge of its sufficiency, and this must satisfy the court. Who can contradict it? The prisoner is not in court. No proof can be made to show the return false, or to show the prisoner is illegally held simply because the prisoner's mouth is sealed within the walls of some distant prison or military fortification, and still the return may be false and the imprisonment illegal.

That this is not the law, the history of this great writ alone demonstrates. Our act of assembly requires the production of the body, which is but reaffirming the common law. The language of Magna Charta is that "no freeman shall be taken or imprisoned but by the lawful judgment of equals, or by the law of the land." Time and influences powerful in themselves tended to operate against the force of this declaration. Those intrusted with the power to enforce it, evaded it. Its insufficiencies culminated during the reign of Charles I., when the Court of King's Bench, out of which the writ issued, decided that they had no power whatever to release any one who had been imprisoned by the command of the King, or the Lords of the Privy Council. Like the Cambyses' judges, who, when their approbation was demanded by the prince to some legal measures, said "that though there was a written law, the Persian kings might follow their own will and pleasure."

But at the next meeting of Parliament the Commons extracted from the king the "Petition of Right," which reaffirmed the right secured by Magna Charta which the king and the courts had outraged and destroyed. The "Petition of Right" declared that no free man should be imprisoned or detained without cause shown, to which he may make an answer according to law. This law was reaffirmed in 1679, in the reign of Charles II., and this last celebrated act is the foundation of our system.

The plain principle of the common law is that cause must be shown for the detention by the return, and the body of the prisoner must be brought into court as commanded by the writ, "so he may make answer" to such return, or, in other words, he may traverse the return.

In addition to the authorities quoted we refer to the remarks of Judge Kane, of the District Court of the United States for the Eastern District of Pennsylvania, 4 Am. Law Reg. 13: "At the common law it (writ of habeas corpus) issued whenever a citizen was denied the exercise of his personal liberty. It issued from the courts of the sovereign, and in his name, at the instance of any one who invoked it, either for himself or another. It commanded almost in the words of the Roman edict, *de libero homine ex hibendo,* that the party under detention should be produced before the court there to await its decree: It left no discretion with the party to whom it was addressed. He was not to constitute himself the judge of his own rights, or of his own conduct, but to bring in the body, and to declare the cause wherefore he had detained it; and the judge was then to determine whether that cause was sufficient in law or not. Such in America as well as England was the well known universally recognized writ of habeas corpus.

In Blackstone's Com. 4th Book, 132, he says: "It is granted on motion because it cannot be had of course; and there is no necessity to grant it; for the court ought to be satisfied that the party hath a probable cause to be delivered, and this seems the more reasonable because (when once granted) the person to whom it is directed can return no satisfactory excuse for not bringing up the body of the prisoner. So that if it issued of mere course without showing to the court or judge some reasonable

ground for awarding it, a traitor or felon under sentence of death, a soldier or mariner in the king's service, a wife, a child, a relation or a domestic confined for insanity or other prudential reasons, might obtain a temporary enlargement by suing out an habeas corpus, though sure to be remanded as soon as brought up to the court.

"On the other hand, if a probable ground be shown that the party is imprisoned without just cause, and therefore hath a right to be delivered, the writ of habeas corpus is then a writ of right which may not be denied but ought to be granted to every man that is committed, or detained in prison or otherwise restrained, though it be by command of the king, the Privy Council or any other."

And the same principle is laid down in the *Passmore Williamson Case*, 2 Casey, 15, by our Supreme Court. The power of this court to issue the writ is conceded, but at the same time the power to afford relief under it is denied. It is a familiar rule that when authority is given to do a thing, all the power necessary is conferred. The writ of habeas corpus would be an empty privilege if the writ could be defeated by a pretext set up by the party to whom it is addressed, that he held the prisoner by color of authority of another jurisdiction. And the case at bar well illustrates the point. Gane sets up that he held the prisoner under a military warrant or order from C. Tower, Provost Marshal, &c., charging the prisoner with assaulting and obstructing the enrolling officer. Was Bressler guilty of a criminal offence against the laws of the United States? The return does not say so, but says that in the "military warrant or order" Bressler is charged with an offence against the laws of the United States. What authority is there for this military order or warrant? The 25th section of the act of Congress of 3d of March, 1863, authorizes "summary arrests" in certain cases. This warrant is no more authority than the verbal declaration of the provost marshal. Does the offence fall within the offences specified in the act? The return does not say so. Is the act constitutional? These were all questions to be determined in the affirmative before the prisoner was held by the authority of the United States and within their jurisdiction.

And this return is claimed to be within *Ableman* v. *Booth*, where the learned judge says (and erroneously we think): "But after the return is made and the State, judge, or court, judicially apprised that the party is in custody under the authority of the United States, they can proceed no further."

We have just seen that the return does not pretend to set up that any offence has been committed against the laws of the United States, or that the act charged in the warrant is an offence under the 25th section of the act referred to, or that the act was constitutional. How then is the court "judicially apprised" that Bressler was in custody under the authority of the United States. Suppose the provost marshal should issue his military warrant against an unoffending citizen; the same return could be made and the jurisdiction of the court ousted, and yet not a pretext for holding him. In *Ableman* v. *Booth*, the returns showing a warrant and commitment by a judicial officer in one case, and a record of conviction and sentence, by a court of competent jurisdiction in the other, did judicially apprise the State Court of Wisconsin that Booth was in the custody of another jurisdiction. The word "judicially" is used by Judge Taney in its legal sense. It means belonging to, or emanating from a judge, as such. Booth was held by judicial and not original process, 3 Bl. Com. 282, Bouvier's Law Dictionary.

It is therefore apparent that the learned judge was talking of the case before him, and with relation to the facts of that case. The difference between the case cited and the present, is that in the present the facts returned have not been judicially ascertained; and hence the return does not judicially apprise the court that the party was held by authority of the United States. In this view of the case it is not necessary to inquire whether the offence alleged in the warrant, a copy of which is annexed to

[Shirk's Case.]

the return, is an offence under the 25th section of the act referred to. If it was necessary to pass upon the question, we should do so without hesitation.

Rule in this case made absolute.

NOTE.—Abraham Bressler, Christian Stutzman and Israel Stutzman, had a hearing before Judge Cadwalader of the United States District Court on the charges preferred by the Provost Marshal, and the Judge decided that they were guilty of no offence against the laws of the United States, and refused to hold them for trial. The defence was conducted by Benjamin W. Cumming, Esq., and Hon. Myer Strouse, of Pottsville, and James C. Van Dyke, Esq., of Philadelphia.

*In re, Hicks and Archibald*, Probate Court of Hamilton County, Ohio, Judge Paddock holds the same doctrine as the preceding cases, 9 Leg. Journ. 25.

The following case dissents from the doctrine of the preceding cases :—