*Antonio Booker v. State of Maryland*, No. 742, Sept. Term 2024. Opinion by Shaw, J.

## *TERRY* STOPS – REASONABLE ARTICUABLE SUSPICION – BLADING

Blading, when a person positions or moves their body in a way suspected "to conceal an object from police view," can be a factor that contributes to a reasonable suspicion analysis and a justification for a *Terry* stop. An investigatory stop pursuant to *Terry v. Ohio*, requires reasonable suspicion. 392 U.S. 1 (1968). We must determine whether the observed conduct reasonably suggested criminal activity. *Crosby v. State*, 408 Md. 490, 507–08 (2009). In making this assessment, we consider "the totality of the circumstances." *Id.* at 507. The Detective saw a visible bulge in Appellant's jacket that appeared to be larger than a phone. The bulge swung when Appellant walked, indicating that it was heavy. Detective noted Appellant appeared to be blading to cover up what was in that pocket. They were also in a high-crime neighborhood. In total, Detective had reasonable articulable suspicion to perform a *Terry* stop.

Circuit Court for Baltimore City
Case No. 123325016

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 742

September Term, 2024

---

ANTONIO BOOKER

v.

STATE OF MARYLAND

---

Reed,
Shaw,
Sharer, J. Frederick,
  (Senior Judge, Specially Assigned),

JJ.

---

Opinion by Shaw, J.

---

Filed: August 28, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Appellant, Antonio Booker was indicted in the Circuit Court for Baltimore City on various charges, including a charge for possession of a firearm in relation to a drug trafficking crime. He filed a motion to suppress evidence and at the conclusion of a court hearing, the motion was denied. Appellant entered a conditional guilty plea to the firearms charge and he was sentenced to five years without parole. This appeal timely followed. Appellant presents one question for our review:

1. Did the motions court err in denying the motion to suppress?

We hold that the circuit court did not err, and, accordingly, we affirm the judgment.

## BACKGROUND

On October 31, 2023, Detective Scott Klein[1] and two other officers from the Baltimore City Police Department engaged in routine patrol operations in the 1900 block of Bentalou Street in Baltimore City. Detective Klein testified, at the suppression hearing, that they "arrived in a marked patrol car, exited the vehicle and began to walk, foot patrolling the area." Detective Klein observed Appellant seated on the front steps of the first house adjacent to a local convenience store. According to Detective Klein, Appellant addressed him directly, asking whether he was required to vacate the steps or leave the

---

[1] During the suppression hearing, Detective Scott Klein testified that he served on the District Action Team, an enforcement unit tasked with patrolling areas with heightened levels of drug activity and gun violence. He had worked for the Baltimore Police Department for four years and had served as the primary officer in nearly 50 arrests for handgun violations. Overall, he had been involved in approximately 100 handgun arrests. He also had completed training in identifying armed persons, specifically without a holster, and body movements or actions.

premises.  Detective Klein responded that he was not required to do so, clarifying that, at that point, no one in the vicinity was being detained or questioned.

Detective Klein continued his surveillance of the area and observed a male approach Appellant and greet him.  The two men exchanged a handshake, and Appellant partially rose from his seated position.  Detective Klein testified that Appellant's "left hand came over to the right side of his body and like pressed in against his, the jacket that he was wearing, pressed it against like the right-side pocket of his jacket."  Detective Klein stated:

> Due to training and experience when people carry a handgun without a holster, they often will place them in the front of their waistbands or in their pockets. So, not that this action by itself meant that the defendant was carrying a handgun in his, in his jacket, but it grabbed my attention as a kind of weird and unnatural movement to make and unless you thought something was gonna [sic] fall out of your pocket or maybe—It was just an action that raised my suspicion and just, I thought was unnatural.

Following the handshake, Appellant sat down, and Detective Klein continued to watch Appellant's pocket.  He observed a distinct shape in the pocket that furthered his suspicion:

> I could see that at the bottom of the pocket there was a long line, like a crease in the pocket about the length of a cell phone. And that there was also a bulge in the pocket that was thicker than a cell would make. I also noticed that the defendant was holding his cell phone in his hand. So, at that point, I suspected that whatever was in that pocket was not a cell phone.

As Appellant stood up to retrieve his food, Detective Klein testified, "once he began to walk, I noticed the pocket was swinging which would indicate to [him] that there was a heavier item in that pocket."  Detective Klein observed Appellant turned his body slightly away from the officers, and he kept his hand over the pocket.  Detective Klein identified Appellant's body movement as "blading," which he explained as "when a person will

2

position their body or move their body in a certain way, or the way they are sitting or standing, or just by covering up an object with a hand" "to conceal an object from the police view."

Based on these observations, Detective Klein and the other officers activated their body-worn cameras and approached Appellant. They identified themselves and Detective Klein informed Appellant that the encounter was being recorded. He told Appellant that he believed that Appellant was armed and asked if he had a permit to carry a firearm. Appellant did not answer directly but stated he needed to pick up his food, and that he did not believe he should be stopped.

Detective Klein testified that he attempted to explain the frisk, but Appellant became agitated, and moved his arms, forcing the officers to calm him down in order complete the pat-down safely. He located an object in the right front pocket of the defendant's windbreaker consistent with a firearm. The officers recovered and secured the firearm and again asked if Appellant had a gun permit. He replied "No." Appellant was arrested and advised of his *Miranda* rights. He asked to call his girlfriend after being arrested, and the officers allowed him to make the call. Detective Klein overheard Appellant saying on that phone call, "Yes, they got the gun off me." The officers also recovered illicit substances from his outer garments.

Appellant was arrested and charged with possession of a firearm during and in relation to a drug trafficking crime; wearing, carrying, or transporting a loaded handgun on or about his person; possession with intent to distribute a mixture containing heroin and fentanyl; possession with intent to distribute heroin; and unlawful possession of heroin and

3

Suboxone (buprenorphine). He later filed a motion to suppress the evidence and statements obtained from his encounter with the officers. At the conclusion of a suppression hearing, the motion was denied. The court reasoned:

> The [s]tandard for a *Terry* Stop is whether there is a particularized and objective basis for suspecting that this person may have been involved in criminal activity. [Detective Klein] clearly articulated the basis for that suspicion . . .
>
> While he had a suspicion, [Detective Klein] clearly articulated the basis for that suspicion . . . .[W]e do have an officer who is in an area where the whole reason he's there is because there's a lot of drug trafficking, and so they basically stand to suppress that sort of criminal activity by the very presence of the uniform in a marked car. We have this object in the pocket that comes to the detective's attention because of a weird move to reach over and hold the pocket while shaking hands. He rules out that it's a cell phone because he has one in his pocket, and the bulge looked too big to be a cell phone.
>
> Was there reasonable articulable suspicion that the suspect was armed to justify a brief detention to confirm or dispel that suspicion? Yes, there was.
>
> Therefore, it was legitimate to stop him, and because they were looking for a weapon, it was reasonable to do the pat down. There's been no suggestion that the pat down was anything other than a pat down, and it revealed the gun.

Appellant elected to enter a guilty plea to the charge of possession of a firearm in relation to a drug trafficking crime, conditioned on reserving his right to appeal any and all evidence and statements seized. Appellant was convicted of possession of a firearm in relation to a drug trafficking crime and sentenced to five years' incarceration, without the possibility of parole. He noted this timely appeal.

**STANDARD OF REVIEW**

In evaluating the circuit court's denial of a motion to suppress evidence under the Fourth Amendment, appellate courts "are limited to information in the record of the

4

suppression hearing and consider the facts found by the trial court in the light most favorable to the prevailing party," unless those factual findings are clearly erroneous. *Washington v. State*, 482 Md. 395, 420 (2022) (citing *Trott v. State*, 473 Md. 245, 253–54 (2021)). We review "the trial court's application of law to the facts" *de novo*. *Id.*; *accord Grant v. State*, 449 Md. 1, 14–15 (2016). In our review, we must "make our own independent constitutional appraisal by reviewing the law and applying it to the facts of the case." *Corbin v. State*, 428 Md. 488, 498 (2012) (quoting *Williamson v. State*, 413 Md. 521, 532 (2010)).

## DISCUSSION

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV.[2] "'The exclusion of evidence obtained in violation of these provisions is an essential part of the Fourth Amendment protections.'" *See Trott*, 473 Md. at 254 (quoting *Swift v. State*, 393 Md. 139, 149 (2006)). "A warrantless search or seizure that infringes upon the protected interests of an individual is presumptively unreasonable."[3] *Grant*, 449 Md. 16–17 (citing *Katz v. United States*, 389 U.S. 347, 356-57 (1967)). The Maryland Supreme Court has identified three types of police encounters: (1) an arrest; (2) an investigatory stop ('*Terry* stop'); and (3) a consensual encounter. *Swift*, 393 Md. at 149–

_____

[2] Generally, Article 26 of the Maryland Declaration of Rights has been interpreted to offer the same constitutional guarantees as the Fourth Amendment of the United States Constitution. *Washington v. State*, 482 Md. 395, 454 (2022).

[3] "The government has the burden of overcoming that presumption." *Grant,* 449 Md. at 17.

5

51. An arrest requires probable cause, while an investigatory stop pursuant to *Terry v. Ohio*, only requires reasonable suspicion. *Id.;* 392 U.S. 1 (1968).

On appellate review of an investigatory stop, we must determine whether the observed conduct reasonably suggested criminal activity. *See Crosby v. State*, 408 Md. 490, 507–08 (2009). In making this assessment, we consider "the totality of the circumstances." *Id.* at 507; *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002). The Maryland Supreme Court discussed the appropriate framework for analyzing this standard in *Nathan v. State*, 370 Md. 648 (2002), stating:

> Under *Terry,* certain seizures are justifiable under the Fourth Amendment if there is a reasonable and articulable suspicion that the person is involved in criminal activity. For Fourth Amendment purposes, a police officer who has reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime may detain that person briefly in order to investigate the circumstances that provoked suspicion.

> Reasonable suspicion of criminal activity warrants a temporary seizure for questioning limited to the purpose of the stop. The determination of whether reasonable suspicion existed is made by looking at the totality of the circumstances in each case to see whether the officer had a particularized and objective basis for suspecting illegal activity.

*Id.* at 660 (internal citations omitted).

The Court has explained that, in determining reasonable suspicion, officers must "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Nathan*, 370 Md. at 663 (quoting *Arvizu*, 534 U.S. at 266). First, the officer must assess all the circumstances, using objective facts, reports, and knowledge of criminal methods to make informed inferences focused on probabilities and practical context rather than academic certainty. *United States*

6

*v. Cortez*, 449 U.S. 411, 418 (1981). Second, the analysis "must yield a particularized suspicion" that the person stopped is involved in criminal conduct. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21 n.18 (1968)).

Appellant argues the court erred in denying his motion to suppress. He contends the officers did not have reasonable suspicion that he was engaged in criminal activity when they observed a heavy object in his pocket. He argues that the officers conducted an unlawful seizure based on observing an unknown item in his pocket. He relies, in part, on *Ransome v. State*, 373 Md. 99 (2003), *In re Jeremy P.,* 197 Md. App. 1 (2001), and *Thornton v. State*, 465 Md. 122 (2019). Appellant notes the considerable impact of permitting officers to conduct arbitrary *Terry* stops any time unknown objects are observed in a person's pocket.

The State argues that the court did not err. According to the State, the detective testified about his specific observations that gave rise to a reasonable suspicion and a justification for a *Terry* stop. These factors included the detective's observations of Appellant blading his body to conceal a firearm, the visible bulge in his pocket, the apparent weight of the object as it moved, and the fact that the tactical team was operating in a known high-crime area.

In *Ransome v. State*, the Maryland Supreme Court addressed whether law enforcement had reasonable suspicion to justify a stop and frisk based on their observation that they were in a high-crime area, the appellant had a bulge in his pants pocket, the appellant "gazed at the unmarked police car," and the appellant appeared suspicious. 373 Md. 99, 100 (2003). At the time, three officers in plain clothes were conducting a routine

7

patrol in their unmarked vehicle in a neighborhood known for frequent narcotics complaints, weapons discharges, and loitering. *Id.* at 101, 111. The appellant was standing on a sidewalk speaking with a friend when the officers approached him. *Id.* at 101. An officer testified that although the appellant appeared nervous and avoided eye contact, the sole basis for the stop and frisk was "just observing the bulge alone." *Id.* at 106. He testified that he decided to frisk immediately upon seeing the bulge and prolonged the encounter by questioning appellant only to "buy [him] time and feel him out." *Id.* The officer conducted a pat-down at the waist, not the pocket where he saw the bulge, and felt a small bulge containing marijuana. *Id.* at 101. He then arrested the appellant. *Id.* A further search revealed the pocket bulge was a roll of money, along with cocaine and Ziplock bags. *Id.* at 102. The appellant was charged with simple possession and possession with intent to distribute cocaine and marijuana. *Id.*

> The Supreme Court reversed the appellant's conviction and explained:

> We understand that conduct that would seem innocent to an average layperson may properly be regarded as suspicious by a trained or experienced officer, but if the officer seeks to justify a Fourth Amendment intrusion based on that conduct, the officer ordinarily must offer some explanation of why he or she regarded the conduct as suspicious; otherwise, there is no ability to review the officer's action.

*Id* at 111. The court held that absent specific facts suggesting the bulge was a weapon or that criminal activity was afoot, the officer lacked reasonable suspicion. *Id.*

In *In re Jeremy P.*, this Court concluded that the officer's observation of the appellant adjusting his waistband did not provide reasonable, articulable suspicion to justify a stop because the officer failed to articulate additional specific facts indicating that

8

criminal activity was afoot. 197 Md. App. 1 (2011). From his vehicle, the arresting officer testified that he observed the appellant standing on the sidewalk after exiting a McDonald's with his friend. *Id.* at 4. The officer saw the appellant repeatedly adjust his waistband underneath his shirt, which he described as a "high risk area" for concealing firearms. *Id.* Acting on this observation, the officer approached the appellant, told him to sit, and then told him to stand for a pat-down. *Id.* at 6. As the appellant stood for a pat-down, the officer saw that the appellant had been "sitting on top of the gun." *Id.* The juvenile court denied the appellant's motion to suppress. *Id.* at 8.

We explained that a search or seizure cannot be "subjectively premised upon a 'hunch' or 'gut reaction.'" *Id.* at 18. We concluded that the stop was unsupported by sufficient factual detail to establish reasonable suspicion. *Id*. at 22. We emphasized that the officer's testimony about "appellant's waistband adjustments" did not articulate a "sufficient factual basis for the stop." *Id.*

In *Thornton v. State*, the appellant was stopped after officers observed him sitting in an illegally parked car. 465 Md. 122 (2019). The officers were patrolling a "high drug area" when they approached and questioned the appellant but never requested his license or registration and did not write a ticket or warning. *Id.* at 131–32. Officers testified that they noticed subtle signs of suspicious movements, specifically, that the appellant looked into his mirror, adjusted himself and repeatedly touched or checked around his waistband area. *Id.* at 132. Based on their training and experience, officers described this behavior as "security checks" that were performed to conceal a firearm. *Id.* at 133. After the appellant declined a vehicle search, the officers ordered him out for a frisk. *Id.* at 134.

9

During the pat-down, the appellant fled but slipped and fell, revealing a handgun beneath him. *Id.* He was arrested and subsequently charged with possession of a firearm after having been convicted of a disqualifying crime. *Id.* at 130. The trial court denied the motion to suppress the gun, finding that the officers had reasonable suspicion. *Id.* at 135.

The Supreme Court reversed the trial court determination, holding that the officer did not have particularized facts to support reasonable suspicion for a *Terry* frisk. *Id.* at 146–49. Instead, the officer acted on "an inchoate and unparticularized hunch." *Id.* at 149. The Court reaffirmed that "furtive movements," even in a high-crime area, do not necessarily justify a frisk without additional facts making the suspicion objectively reasonable. *Id.* at 149.

In *Washington v. State*, 482 Md. 395 (2022), the Maryland Supreme Court again addressed a motion to suppress and found that officers had reasonable suspicion to conduct a stop based on the appellant's flight and other surrounding circumstances. While patrolling a high-crime area in Baltimore City, officers observed Washington and another individual standing in an alley. *Id.* at 405. Upon noticing the marked police vehicle, both men immediately fled. *Id.* Washington ran, jumped a fence, attempted to hide behind a bush, and continued fleeing before the officers eventually detained him. *Id.* At the suppression hearing, officers described the area as a high crime area and stated that Washington's flight and evasive maneuvers gave them reasonable suspicion to detain him. *Id.* at 409–12. The circuit court agreed and denied Appellant's motion to suppress. *Id.* at 414. Washington entered a conditional guilty plea and appealed. *Id.* at 415. The Appellate Court affirmed the conviction. *Id.* at 416–17.

10

The Maryland Supreme Court granted Washington's petition for certiorari and ultimately affirmed the lower court's decision to deny the motion to suppress. *Id.* at 418; 448–53. The Court held that while unprovoked flight in a high crime area does not automatically equal reasonable articulable suspicion for a *Terry* stop, under a totality of circumstances analysis, such flight can be a factor in concluding that there was criminal activity or a factor consistent with innocence, "[j]ust as a bulge in a person's clothing has different implications for a reasonable suspicion analysis depending on 'where it is, what it looks like, or the circumstances surrounding its observation.'" *Id.* at 449–50 (quoting *Ransome v. State*, 373 Md. 99, 107 (2003)). The Court held that the officers' testimony at the suppression hearing was sufficiently particularized to establish that the block where Washington was stopped was a high crime area and the nature of his flight and evasive measures established reasonable suspicion. *Id.* at 448–53.

The present case is similar. Here, Detective Klein testified that while surveilling a known drug area, he saw Appellant greet a man with a handshake, partially stand, and "when he did this, his left hand came over to the right side of his body and like pressed in against his, the jacket that he was wearing, pressed it against like the right side pocket of his jacket." He continued explaining that it was "a weird movement to make and . . . [it] raised my suspicion and . . . was unnatural." He noticed that there was "a bulge in the [Appellant's] pocket that was thicker than a cell phone would make" and Appellant already had a "cell phone is his hand. So, at that point, I suspected that whatever was in that pocket was not a cell phone." As Appellant walked away, Detective Klein observed his pocket swinging with the weight of a heavy object and noted that Appellant "stood up and he

11

reached his hand across to put it on his pocket, you know, it could've been that he was trying to conceal the print of that firearm from my view" which was consistent with "blading."

In our view, Detective Klein did not rely on a single observation but instead he relied on multiple observations of Appellant's behavior and actions. He testified that Appellant's movement appeared "weird and unnatural," and was consistent with someone adjusting an unsecured object. Detective Klein testified that based on his training and experience, individuals carrying firearms without holsters often conceal them in waistbands or pockets, and that this movement aligned with such behavior. He further mentioned that he saw a long crease in the bottom of Appellant's pocket, which was roughly the size of a cell phone, but also a thicker bulge that suggested a larger item. Detective Klein also noticed that Appellant's "pocket was swinging" once he stood up, which indicated that the item was heavy and likely a firearm. He observed Appellant "blade" his body by turning away from police view and covering his pocket with his hand.

In *Ransome v. State*, the Maryland Supreme Court emphasized that the presence of a bulge and location in a high-crime area, without more, does not provide a sufficient basis to justify a frisk. *Ransome*, 373 Md. at 100. The Court's holding in *Jeremy P.* makes clear that a stop cannot be based solely on a waistband adjustment, in a high crime neighborhood, without additional evidence suggesting criminal activity, and that the officer must articulate why the conduct indicated a weapon rather than an innocuous object like a cell phone. *In re Jeremy P.*, 197 Md. App. at 20. Similarly, in *Thornton*, the Court found that presence in a high-crime area, even when combined with an illegally parked vehicle, was

12

not enough, as officers were required to identify additional suspicious conduct to justify the stop. *Thornton*, 465 Md. at 148.

In *Reid v. State*, the Supreme Court concluded that the officers did not have probable cause to perform a *de facto* arrest based on blading and other factors present there.[4] 428 Md. 289, 306 (2012). While the Court did not address whether blading could have been a factor under a *Terry* framework, the dissent noted that blading could be a factor in such an analysis. *Reid v. State*, 428 Md. 289, 319–20 (2012) (Harrell, J., dissenting). We observe that other jurisdictions have also held that an individual blading their body to conceal an object from police view can be a factor in a reasonable suspicion analysis. *See, e.g., United States v. Shaw,* 874 F. Supp. 2d 13, 24–25 (D. Mass. 2012) (finding that the officer had justification to perform a *Terry* frisk, in part, because the defendant "continued to 'blade' his body"); *United States v. White,* 670 F. Supp. 2d 462, 475–76 (W.D. Va. 2009) (holding that defendant's blading of the "right side of his body away from" the officer was a factor supporting reasonable articulable suspicion), *aff'd*, 404 Fed. Appx. 757 (4th Cir. 2010); *State v. Johnson*, 861 S.E.2d 474, 483–84 (N.C. 2021) (determining that defendant's attempt to blade his body helped to "solidif[y] the existence of reasonable suspicion"); *Interest of T.W.*, 261 A.3d 409, 424 (Pa. 2021) (holding that the defendant's attempt to conceal his body from police view contributed to reasonable suspicion for a *Terry* frisk); *State v. Murray*, 213 A.3d 571, 579 (Del. 2019) (concluding that defendant's blading by

---

[4] In that case, the officers noted that the appellant "matched a description given by an informant," appellant bladed his body when "the officers approached," appellant looked for where the gun would have been, appellant "had something heavy in his pocket that caused it to sway," and he ran from the police.

turning the right side of his body away from the officer factored in favor of the officer's reasonable articulable suspicion to perform a *Terry* stop); *Commonwealth v. Crowder*, 253 N.E.3d 1207, 1221 (Mass. 2025) ("Where, as here, there is a specific, supported finding of 'blading,' this movement can contribute to the reasonable suspicion calculus.") *petition for cert. filed*, __ U.S.L.W. __ (U.S. June 25, 2025) (No. 24-7498).

Based on the record in the case at bar, we hold that the court did not err in denying the motion to suppress. Blading can be a factor supporting reasonable articulable suspicion. Detective Klein's testimony, viewed through the lens of his training and experience, provided a particularized and objective basis for suspicion that went well beyond the observations and assertions that the courts rejected in *Ransome*, *Jeremy P.*, and *Thornton*.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**