## Holsey *against* Trevillo.

One who is special bail may depute another to execute a bail piece for him; or one of two special bail may depute the other to execute it.

One who is in the custody of his special bail upon a bail-piece from a justice of the peace of New Jersey, cannot be arrested in Pennsylvania and taken out of the custody of his bail by authority of a *capias ad respondendum*.

The writ of *habeas corpus* may issue at the instance of any one who claims a right to the custody of the person restrained or taken from him.

*HABEAS CORPUS* returnable before the judges of the supreme court. The facts are stated in the opinion of the court.

*M'Candless*, for the relator, cited 3 *Conn. Rep.* 84; 7 *Johns. Rep.* 145; 8 *Pick.* 138; 6 *Mod.* 231; *Highm.* 71, 198; 3 *Binn.* 404; 7 *Wheat.* 38.

*Watts*, contra, cited 1 *Watts* 66.

The opinion of the Court was delivered by

Huston, J.—This matter came before the court under the following circumstances, and on the facts stated. The relator showed a bail piece, duly certified, from the inferior court of common pleas of Essex county, New Jersey, in a suit of R. W. against A. R. Woolley, in which suit the relator, Smith Holsey, and J. Allen, were bound as special bail for the said A. R. Woolley, who was a citizen of Kentucky. The relator had met A. R. Woolley on his road to Jersey, and by virtue of his bail piece, had him in custody at Pittsburgh: he was taken from the custody of his bail by E. Trevillo. On the return to the writ of *habeas corpus*, the sheriff returned that he had arrested Mr Woolley on a *capias ad respondendum*, issued by the administrators of O. Ormsby, deceased, in which bail was required in 3000 dollars. This writ, it was conceded, issued after the bail arrived, with his principal, in this city; and on it he was taken from the custody of the bail, who sued out this writ.

Smith Holsey had also a regular deputation from J. Allen, the other special bail. It seems settled that special bail may depute

[Holsey v. Trevillo.]

another to act for him in executing a bail piece; 3 *Conn. Rep.* 84; 7 *Johns. Rep.* 145; but I take it where there are two persons special bail, one may take out a bail piece, and bring and surrender his principal in discharge of his bail; or at all events, in discharge of himself.

The writ of *habeas corpus* may issue at the instance of the party restrained of his liberty, or at the instance of any other person who has a right to the custody of such person; and the English books abound with cases of *habeas corpus* at the instance of special bail; and this, in civil cases, is matter of course.    When confined on a criminal charge, it must be on motion; but in either case it is not matter of favour, but *ex debito justitiæ. 7 Durn. & East* 222. If sentenced to transportation, and on board the ship ready to sail, the court, instead of granting the *habeas corpus,* will at once order an *exoneretur* to be entered.    See *Highmore on Bail,* 71–199; and *Petersdorf on Bail,* 404–408.

The authorities cited, and which will be cited, show that the power of the special bail over the principal is very great: they may arrest in the night; on Sunday; may force his doors; and in case of resistance, use any force necessary to overcome the resistance: and it is reasonable that the law should have been so settled; for where one person is bound to produce, at the legal period, another, or be liable to pay a debt for him, he ought, in justice, to be able to enforce appearance: if it were not so, many good and honest men would not get bail, and lose the benefit of their labour and exertions to meet the debt at the period when the law will enforce payment.

In England, however, the government is one; and the cases I have found in their books are such, that the suit in which bail has been entered, and the charge on which the person is confined, is in some court within the jurisdiction of the king's bench, of which alone I have spoken, and the power of which is very much the same as that of this court within this state.

In the United States, the citizens of every state are constantly passing to other states; and many have contracts and liabilities in several states: hence a man may be sued and give special bail in one state, and before that suit is ended become indebted in another state, and arrested and confined, or give special bail there; and this presents a case, perhaps, different from what is found in the English books.

Taking into view our general and separate state governments, the jurisdiction of the several courts is such, that we need not expect to find, out of our Union, decisions in point in all cases.    If we look to the constitution of the United States, we find, "that full faith and credit shall be given, in each state, to the public acts, records and judicial proceedings of every other state," &c.    Without pretending to state the effect of this provision in all cases, it may have some bearing on a case like the present; and the harmony

[Holsey v. Trevillo.]

of the Union might be endangered if any one state should become a city of refuge to the debtors of all other states; and if crossing the line of any state should secure any principal debtor from his special bail. It has been said the bail has the principal on a string, and may pull it when he pleases. I do not believe that legal rights are made clear by metaphors, or comparison with material things. It seems settled, that either by the nature of the agreement or by the operation of law on the agreement, the bail has rights over the personal liberty of the principal, of the most positive kind, and that a sheriff is bound to assist in enforcing them; and we have authority for saying this right of bail extends beyond the state in which bail was entered. 7 *Johns. Rep.*, above cited; and Commonwealth *v.* Bricket, 8 *Pick.* 138.

This matter is not new in this state: 2 *Yeates* 263: as early as 1798 a *habeas corpus* issued to the keeper of the prison in Philadelphia, who returned he held the prisoner on two several writs of *capias* as mesne processes, one of which had been executed before the bail came from Virginia with his bail piece. The case is not very distinctly stated; but the court say, "in the relation in which the several states composing the union stand to each other, the bail in a suit entered in another state have a right to seize and take the principal in a sister state, provided it does not interfere with the interests of other persons who have arrested such principal. But where actions have been brought against the party *previous* to such seizure, the same right does not exist." I then understand the case that the debtor had been arrested and was in custody of the sheriff here *before the seizure* on the bail piece, and for that reason was not delivered to his bail.

See also 3 *Yeates* 37, where the right of bail in another state to take the principal here is again recognized; but the right to remove him was suspended until the sentence of a court martial, passed against him, was executed.

The case in 1 *Watts* 66, which has been cited on the other side, does not apply. There is no objection here to the *capias* issued at the suit of Ormsby's administrators: it is not because the writ or the arrest on it were, in themselves, irregular or informal, that a discharge from it is asked; but because Mr Woolley was in the custody of the law of another state at the time of the arrest. The rights of the relator under the laws of New Jersey in such case, have been recognized in other states, and in this state. If this were not so, a prisoner under a bail piece could make a purchase at any house where he stopped, and refuse to pay, and be arrested and taken from his bail.

This opinion is not to be understood as going beyond the case before us, of a bail piece from another state, and the principal seized and in custody under it, and afterwards a *capias* issued and an arrest of him while in custody of his bail.

Mr Woolley is relieved from the custody of the sheriff, that his bail may proceed with him.