COMMONWEALTH, ex rel. WEBSTER, *v.* FOX.

The enlistment of minors in the army of the United States is void under the act of Congress: and the return to a *habeas corpus* that he is held as a deserter, is immaterial.

The state courts have concurrent jurisdiction with the courts of the United States in such cases.

Desertion by one whose enlistment is absolutely void, may be punishable in certain cases; as if it occurred in the face of an enemy, or in the enemy's country, where camp followers are subject to martial law.

*Jan.* 29—*Feb.* 5.   HABEAS CORPUS.   The return stated, that the prisoner had enlisted in the army of the United States, had deserted, and surrendered himself; and the matter had been decided by the Court of Common Pleas..   It was proved that the prisoner was the minor son of the relator, who had never assented to the enlistment.

*Todd*, for the relator.—The only question is, is the fact of desertion material.   The court below considered themselves bound by the decision in Commonwealth *v.* Gamble, 11 Serg. & Rawle, 93, on that point.   But since the enlistment is void unless assented to by the father, the desertion is no breach of the contract, but a mere declaration of an intention not to be bound—a disclaimer of the contract.   In Grace *v.* Wilbur, 10 Johns. 453, it was so held; and the settled rule is, there can be no binding agreement prohibited by statute; 17 Mass. 281.   In 1 Mason, 77, counsel agreed there could not be a criminal desertion if the enlistment was illegal: 5 Hill, 16.

*Pettit*, contrà.—Is the contract void or voidable ?   If the latter, the party is liable for his acts done, until it was lawfully avoided; for it is settled, that a minor cannot elect to avoid his contract during minority: Zouch *v.* Parsons, 3 Burr. 1794.   The power of the United States to enlist minors is not disputed; but it is pro-

hibited without the parents' consent. A subsequent assent ratifies the contract, as was expressly ruled in Commonwealth *v.* Camack, 1 Serg. and Rawle, 87. The enlistment being, then, only voidable by the parent, will this court permit the minor to escape from the criminal charge? This was decided in Commonwealth *v.* Gamble, 11 Serg. & Rawle, 93. Walker's Case, Am. Jurist, 1830, is analogous: there the term was up five days; but the court refused a discharge while the prisoner was held under a charge for a crime committed during his enlistment. There was then no statutory provision on this subject. The same rule was applied to an apprentice in 7 East, 376.

The previous hearing should have been considered binding; since all the courts have equal jurisdiction, and no appeal is given: Mercein *v.* Barry, 25 Wend. 64. It may be also doubted whether the United States courts have not exclusive jurisdiction of this matter, it being an alleged contract with the United States: 1 Mass. 86; 1 Wheat. 304; 2 Hall, L. J. 192; 9 Johns. 239.

*Feb.* 19. COULTER, J., (after stating the case.)—The counsel for the United States interposes as an objection to the prisoner being discharged by this court, that we have no jurisdiction: that he can be discharged only by a court of the United States; and cites the case of Ferguson, in 9 Johns. Rep. 239, to sustain that position. That was an application to allow a *habeas corpus* in term time to the Supreme Court for the body of an enlisted soldier who was a minor, and the court refused to allow the writ, because it rested in the sound legal discretion of the court to allow or refuse it, and because application could be made to the United States Court. It is true that Chancellor Kent, then chief justice, states, in the opinion delivered by him, that the United States Court had jurisdiction, and that the state had not. But Judge Thompson plainly intimated, that the state court had jurisdiction, but declined to allow the writ, merely as a matter of discretion for the reason stated; that is, that application could be made to the United States Court: and the other judges concurred with him, expressly reserving their opinion on the question of jurisdiction. The case, therefore, is not an adjudicated case in favour of the position taken by the counsel. But the Supreme Court of New York, in the matter of Carlton, 7 Cowen, 471, expressly adjudicated that they had jurisdiction, and discharged upon a writ of habeas corpus, a minor, who was detained and restrained of his liberty by an officer in the army of the United States, as an enlisted soldier. The state courts

of Massachusetts have maintained that they have jurisdiction in such cases: Commonwealth v. Harrison, 11 Mass. Rep. 63; Commonwealth v. Cushing, Ibid. 67. In Virginia, the general court ruled, that the state courts had concurrent jurisdiction with the courts of the United States, in all cases of illegal confinement under colour of the authority of the United States, when that confinement was not the consequence of a suit or prosecution pending in the courts of the United States: Sergeant's Constitutional Law, 287. In Pennsylvania, the jurisdiction of state judges and state courts, has not before been doubted; and from the case of the Commonwealth v. Murray, 4 Binn. 487, down to the present term, numerous cases have occurred in which it has been exercised, some of them reported, and many more unreported. Our statute of 18th February, 1785, sec. 13, provides that the writ shall issue in all cases when any person, not committed or detained for any criminal or supposed criminal matter, shall be confined or restrained of his liberty, *under any colour or pretence whatsoever;* and imposes the like penalties for not granting the writ as are imposed by the previous sections when the person is committed or detained for any criminal or supposed criminal matter. This is in accordance with the principles of the common law, by the provisions of which the writ of *habeas corpus ad subjiciendum* is the prerogative of the citizen; the safeguard of his person, and the security of liberty— no matter where or how the chains of his captivity were forged— the power of the judiciary in this state is adequate to crumble them to dust, if an individual is deprived of his liberty contrary to the law of the land. If the laws of the United States authorize the detention of the minor, he must be remanded; but if they do not, he must be discharged. By the act of 16th March, 1802, sec. 11, it is enacted in the proviso, that no person under the age of twenty-one years shall be enlisted by any officer, or held in the service of the United States, without the consent of his father, guardian, or master, first had and obtained, if any he have, &c.; and inflicts a penalty specified in the act, upon the officer who shall enlist or hold such minor. There is no mist or obscurity about this phraseology; it is as plain as the English language can make it. So, the enlistment and holding of the minor, under the circumstances mentioned in the act, is against the law, and the officer who enlisted him is guilty of an offence for which he may be amerced by his government. A penalty inflicted by statute for an act, implies a prohibition of the act, so as to make a contract relating to it void: Mitchell v. Smith. 1 Binn. 118. Here there is not only a penalty

imposed, but the act is declared by the statute to be illegal. A contract against the laws of the United States, or of this state, cannot be enforced in the courts of this state : 6 Binn. 321 ; 4 Serg. & Rawle, 159. In the case of Carlton, 7 Cowen, 471, before referred to, although the minor had represented to the officer enlisting him, that he was over twenty-one years of age, and had no father or guardian, the court declared the contract and enlistment void, and discharged the soldier. I will not say that Congress may not declare the enlistment of minors to be lawful and valid ; but they have not done so in relation to the army of the United States. A case of pressing emergency may occur, which will induce them to do so. When our country is invaded by a foreign foe, and the great and essential principles of liberty and self-government are in danger of destruction, perhaps they will. But until Congress interposes, we must take the law as we find it, and regard the claim which the law of God, of nature, of the state, and of the United States, gives the father to the services of his child, until he arrives at the age of majority, and which renders the minor unable to make a valid contract. Under the circumstances of the case, without the consent of his father, guardian, or master, there is no case in our books which interdicts this view of the case. We are, therefore, of opinion, that the minor could not make a valid contract under the circumstances, and that it was and is void. In the case from 11 Serg. & Rawle, 93, which was an enlistment into the naval service, with respect to which the act of Congress is different, inasmuch as boys are somewhat essential to that service, in order that they may learn the duties which require an apprenticeship, the chief justice, in delivering the opinion of the court, says, the contract is valid where it is not positively forbidden by the state itself, and puts that case on the ground of the contract being allowed by law. In the case of enlistment into the army, the contract is positively forbidden by the law of Congress. We regard the circumstance of the minor having left the custody of the officer, or deserted, as making no material difference in this case. The contract of enlistment, under the circumstances, (the minor having a father, who had a right to his services at the time,) was not binding on the minor, and he might leave the service. It was probably in view of this category, to wit, that the minor might choose to leave the service, or be required by his father, that the act imposed a penalty on the officer to the amount of the clothing, bounty, and pay of the minor, for enlisting him without the consent of his father. An indenture of apprenticeship, executed by a minor

without the consent of his father, is not binding on the infant; 4 Watts, 80 : and it does not appear from the return of the officer, that the minor is under arrest for the crime of desertion, and is to be tried by a court-martial. That might possibly make some difference; if he was in process of trial, this court would, perhaps, not look beyond or behind the proceedings which were to bring him before even a military court. But the observations of the chief justice on this subject in the case of 11 Serg. & Rawle, it must be remembered, were predicated on an enlistment in the naval service, where the contract of the minor was not prohibited, but authorized, and where the officer returned that he was under arrest for the crime of desertion.

In the presence of an enemy, or in an enemy's country, even camp-followers would probably be amenable to martial law; for if they were not, the safety of the army might be somewhat jeoparded by their desertion to the enemy. It could only be in that light that a person unlawfully enlisted and held without authority of law, could be amenable to military punishment. But this is not a case of that kind. Nor is it apprehended that a case of that kind will be brought into this court, as we may be allowed to hope that a hostile army will never be within our borders. But if the case, or one to be ruled by such high necessities, should occur, the court will decide it.

The prisoner is discharged.