## Commonwealth ex rel. *v.* Newcomet, Appellant.

*Habeas corpus—Final order—Appeals—Warden of county jail—Sunday laws of April* 22, 1794, 3 *Sm. L.* 177.

Where a person is committed to the county jail until he shall enter security to answer a charge of violating the Sunday law of April 22, 1794, Sm. L. 177, and on the same day the court awards a writ of habeas corpus, and orders that the relator be released from imprisonment on giving security in an amount stated, to appear at the hearing and to submit to such order as the court may make, and the relator enters security, appears at the hearing and is discharged, the court cannot be convicted of error in discharging the relator, and the warden of the county jail has no standing to appeal from such order.

Argued Nov. 14, 1901. Appeal, No. 242, Oct. T., 1901, by defendant, from order of C. P. Berks Co., Oct. T., 1901, No. 83, on habeas corpus proceedings in the case of Commonwealth ex rel. William Gottschall v. William W. Newcomet, Warden of the Berks County Jail. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Petition for writ of habeas corpus.

The case was heard before ENDLICH, J., who filed the following opinion:

On October 14, 1901, informations were laid before a magis-

trate of the city of Reading against seventy motormen and conductors of the United Traction Company, a corporation of this state, conducting the business of operating street cars in the city of Reading. In these informations the defendants were charged with the violation of section 1 of the act of 1794, 3 Smith's Laws, 177, in working the company's cars on Sunday, October 13, 1901, between the hours of 5 A. M. and 12 P. M., in the city of Reading.

The object of these prosecutions, as frankly stated by counsel for the prosecutor, was not to stop the running of cars on Sunday, but to punish the defendants for their participation in the operation of the street car line.

Defendants were admitted to bail, but on October 18, 1901, the sureties for four of them—William H. Baum, Clarence Brown, Hiester Obold and William Gottschall—without the knowledge of these parties, threw up their bail, took out bail pieces and these defendants were committed; thereupon, on the same day, they applied for writs of habeas corpus, which were issued, the hearing being fixed for October 19, 1901, at 10 o'clock A. M.

In the mean while the hearing before the magistrate had been appointed for 2 o'clock in the afternoon of October 18, 1901. At the time appointed the relators did not personally appear before the magistrate. Neither did any of the other defendants, but there was an appearance by counsel, which was misunderstood by the magistrate as being an appearance of the relators, as well as the remaining sixty-six defendants. The magistrate, who had notice of the pendency of the four writs of habeas corpus and of the time fixed for the hearing of them, under this misapprehension, proceeded to hear testimony as to all the defendants, the inclusion in their number of the relators having apparently passed unnoticed by their counsel, who also represented the remaining sixty-six, and, on the evening of October 18, the magistrate rendered judgment against the entire number of defendants.

In the absence of any distinct, actual and voluntary submission by the relators to the jurisdiction of the magistrate, the proceedings, so far as they are concerned, were clearly irregular and do not stand in the way of a disposition of these writs now.

In that disposition the controlling question is whether the

act charged against the relators is a violation of section 1 of the act of 1794, or whether it comes within the exception made by that act, as to works of necessity. On that question there is no decision pointed out conclusively determining it one way or the other. The case most closely touching this question is that of Sparhawk v. Union Passenger Ry. Co., 54 Pa. 401. In that case, however, the court was passing upon the question whether private property owners, alleging that the operation, on Sunday, of street cars in the streets upon which their properties fronted had a standing to complain of it as constituting such a nuisance as entitled them to ask for an injunction restraining their operation, and the act of 1794 was brought into the case only incidentally as bearing upon that question, because of its supposed effect in rendering the operation of the cars on Sunday unlawful. The decision of the Supreme Court was that the running of cars, as complained of, did not constitute such a nuisance as gave the plaintiffs a standing to ask for the injunction prayed for, and that, granting the unlawfulness of the business under the act of 1794, that circumstance did not aid their complaint. The decision, therefore, cannot be understood as involving an adjudication of the question whether the operation of street cars, upon Sunday, is a violation of the act of 1794 or not; and the expressions of opinion on that question by the various justices who delivered opinions in that case do not appear to be controlling. In the case of Com. v. Matthews, 152 Pa. 166, it is said by the Supreme Court, at p. 169:

The act of 1794 is a wise and beneficial statute, and we would regret to see it interfered with. We must, however, be allowed to express the fear that too literal an interpretation and enforcement of it may create an antagonism that may lead to its repeal, or, at least, serious modification. There may be such a thing as excessive zeal in invoking its penalties in extreme cases. The act is in more danger from its friends than from its enemies.

Looking at the statute in the light of this authoritative declaration, it is evident that the question, whether a given act is a work of necessity or not, depends, not upon conditions and situations as they existed in 1794 or fifty or thirty-five years ago, but upon conditions as they presently exist. What was

508, (1901).] Opinion of Court below—Opinion of the Court.

deemed a necessity generations ago may not be looked upon as a necessity to-day ; and what was not thought of even as a convenience, no more than a generation ago, may very well be, and is, in some instances, a necessity to-day.   The universal usage of the present time is valuable testimony upon the question whether a thing is presently a necessity or not; and the most enlightened opinion, based upon conditions as they existed thirty-five or fifty years ago, is not at all conclusive of that question to-day.   Having regard to conditions as we know them to be at the present time, the necessities of the people of a large city, the necessities of persons residing in the suburbs, and so many other obvious considerations, that it would be a waste of time to enumerate them, I am of the opinion, and so decide, that the running of street cars on Sunday is not a violation of the act of 1794 ; and for that reason, it being apparent from the information and commitment that these relators were arrested and committed for no offense, they will now be discharged, and the costs of these writs of habeas corpus will be imposed upon the prosecutors.

*Error assigned* was the order of the court discharging the relator.

*W. B. Bechtel* and *A. H. Rothermel,* District Attorney, for appellant, cited: Johnston v. Com., 22 Pa. 109; Sparhawk v. Union Pass. Ry. Co., 54 Pa. 401.

*Richmond L. Jones,* with him *James A. O'Reilly,* for appellee, cited : Russell v. Com., 1 P. & W. 82 ; Clark v. Com., 29 Pa. 134; Com. v. Kryder, 1 Penny. 145 ; Wright v. Crane, 13 S. & R. 452; Augusta, etc., R. R. Co. v. Renz, 55 Ga. 126 ; McGatrick v. Wason, 4 Ohio, 566 ; Phila., etc., R. R. Co. v. Phila., etc., Steam Towboat Co., 23 Howard, 209.

OPINION BY RICE, P. J., December 16, 1901 :
Upon an information charging that the relator had violated the provision of the 1st section of the Act of April 22, 1794, 3 Sm. L. 177, known as the Sunday law, and thereby had forfeited the sum of $4.00, a warrant of arrest was issued by an alderman on October 14, 1901.   On October 18, 1901, the alderman committed the relator to the county prison.   The commitment,

after reciting the fact that the relator stood charged before the alderman, " with having, within the said county, violated Sunday laws of 1794 by performing worldly employment," concluded as follows : " And you the said keeper are hereby required to receive the said William Gottschall into your custody in the said prison and him there safely to keep until he shall find sufficient surety for his appearance at the next court of quarter sessions to be held for the said county, to answer the above charge ; or be otherwise delivered by due course of law." On the same day the court awarded a writ of habeas corpus returnable on the following day, and at the same time made an order as follows : " The relator to be released from imprisonment upon entry, in the office of the prothonotary of Berks county, of security in $200 for his appearance at the hearing above appointed and his submission to such orders as may thereupon be made." The relator gave security by bond filed in the prothonotary's office and was released from custody. On the following day, after hearing and argument, the court discharged him and directed the prosecutor to pay the costs. From this order the warden of the prison took this appeal.

It was held in Doyle v. Commonwealth, 107 Pa. 20, that an order, in habeas corpus, discharging the relator from the custody of a deputy sheriff, is a final order or decree which will entitle such officer to remove the proceedings to the Supreme Court for reveiw upon certiorari. Mr. Justice STERRETT, after showing that the proceedings were reviewable, said : We are also of opinion that the officer from whose custody the relator was improperly discharged is the proper person to sue out the writ. This point was in effect ruled in Holsey v. Trevillo, 6 Watts, 402." It is worthy of note, that the case of Holsey v. Trevillo did not come before the Supreme Court by writ of error or certiorari but by habeas corpus issued by the Supreme Court at the instance of special bail, who claimed the right to the custody of the person taken from him. Granting, however, that an appeal will lie from an order in habeas corpus discharging the relator, where the hearing upon the habeas corpus did not involve the determination of questions of fact arising upon oral testimony, as in proceedings relating to the custody of children, but only the regularity and legality of the commitment, we are not convinced that the court committed error in

discharging the relator.   The legislative authority for committing him upon the charge made in the information until he should give security for his appearance to answer the charge in the quarter sessions has not been shown.   In this view of the case it is not necessary to discuss the question whether the act charged was in violation of the act of 1794 properly construed.

But aside from the question of the regularity and the legality of the commitment, had the keeper of the prison a right to appeal from the order?   Is he a party aggrieved ?   We have called attention to the fact that the relator had been released from custody upon his giving bail to appear at the hearing and to submit to such order as the court might make.   The warden in his return carefully and very properly disclaimed having the custody of the relator as follows: "In obedience to the order of the court of October 18, 1901, served upon me, I released the relator from custody."   Certainly he has no standing to complain that the court did not make an order recommitting the relator to his custody, and as he was not actually or constructively in his custody at the time the final order was made, we are of opinion that he is not a party aggrieved and not entitled to an appeal.

The second reason assigned in support of the motion to quash the appeal is sustained, and the appeal is quashed at the costs of the appellant.