## Commonwealth ex rel. Smith v. Butler, Appellant.

*Habeas corpus—Appeal—Final order.*

An order in habeas corpus proceedings discharging the relator from the custody of a deputy sheriff is a final order or decree which will entitle such officer to remove the proceedings to the Superior Court for review upon certiorari.

*Military law—Marine corps—Naval service.*

*It seems* that the marine corps is a part of the naval service of the United States.

*Quære*, whether the enlistment of a minor over eighteen years of age in the marine corps without the consent of his parents or guardian, is invalid.

*Habeas corpus — Enlistment in army and navy — Jurisdiction of state courts.*

A state court has no jurisdiction upon habeas corpus to inquire into the validity of enlistments into the marine corps of the United States, and to discharge enlisted men from said service, when in the judgment of the

court their enlistment had not been made in conformity with the laws of the United States. Tarble's Case, 13 Wall. 397, followed.

Argued Feb. 10, 1902. Appeal, No. 5, Oct. T., 1902, by defendant, from order of Q. S. Phila. Co., discharging relator in habeas corpus proceedings in the matter of Commonwealth ex rel. Philip Wade Smith v. Captain Smedley D. Butler. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Habeas corpus proceedings.

The action of the court below was on a writ of habeas corpus issued by that court for the production of the body of one Philip Wade Smith, who was alleged to have been restrained of his liberty by Captain Smedley D. Butler, in the command of the marine corps situate in Philadelphia county and alleging that the said Philip Wade Smith was nineteen years of age and that he had enlisted in the marine corps without the consent of his father, Homer C. Smith, and asking for his discharge.

The court below discharged the relator.

*Error assigned* was the order of the court discharging the relator.

*J. Whitaker Thompson*, assistant United States attorney, with him *James B. Holland*, United States attorney, for appellant. —The court of quarter sessions of Philadelphia county had no jurisdiction to issue the writ of habeas corpus, or to discharge the relator because from the facts disclosed in the petition for the writ, and the return thereto, the case is one exclusively within the jurisdiction of the courts of the United States: United States v. Tarble, 80 U. S. 397; Ableman v. Booth, 21 Howard, 506; United States v. Booth, 21 Howard, 506; Robb v. Connolly, 111 U. S. 624; 4 Sup. Ct. Rep. 544; Ex parte Royall, 117 U. S. 241; 6 Sup. Ct. Rep. 734.

From the facts set out in the petition it is apparent that the writ of habeas corpus should not have been issued, because no law of the United States prohibits the enlistment of a minor over eighteen years of age into the marine corps of the United States: Act of congress of May 15, 1872, Revised Statutes, sec. 1419.

And the marine corps has been always held to be a part of the naval service ; Wilkes v. Dinsman, 7 How. 89 ; In re Doyle, 18 Fed. Repr. 369 ; Com. v. Gamble, 11 S. & R. 93.

*J. Campbell Lancaster,* for appellee.—The principal contention raised by the appellant is that as the minor was in the custody of the United States marine corps service, having enlisted in that service, that the state court has no jurisdiction to release him, but that the jurisdiction of the United States court in such cases is exclusive. This question has been raised several times in this state, beginning with the case of Com. v. Murray, 4 Binney, 487, decided in 1812, down to the most recent case of Newcomb, 21 Pa. ·C. C. Repr. 560, decided in 1898 by President Judge WOODWARD of the county court, and the decisions have uniformly been to the effect that the right of the state court to assume jurisdiction in such cases and to issue writs of habeas corpus is undoubted. A list of those cases is herewith appended : Com. v. Barker, 5 Binney, 423 ; Com. v. Callan, 6 Binney, 255 ; Com. v. Camac, 1 S. & R. 87 ; Com. v. Robinson, 1 S. & R. 353 ; Com. v. Biddle, 4 Clark, 35 ; Com. v. Wright, 3 Grant, 437 ; Com. v. Gane, 3 Grant, 447 ; Com. v. Selfridge, 7 Phila. 76 ; Com. v. Blake, 8 Phila. 523 ; Com. v. Fox, 7 Pa. 336 ; Newcomb's Case, 21 Pa. C. C. Rep. 560.

OPINION BY RICE, P. J., March 14, 1902 :

It is urged that no appeal lies from an order discharging the relator under a writ of habeas corpus. The appellee's counsel cites in support of this proposition : Russell v. Commonwealth, 1 P. & W. 82, Clark v. Commonwealth, 29 Pa. 129, Commonwealth v. Kryder, 1 Penny. 143, and Commonwealth v. Blatt, 165 Pa. 213. In the first mentioned case it is stated by the reporter that the writ was quashed on the ground that no writ of error will lie to remove a judgment upon a habeas corpus. This was far from deciding that the action of the lower court as disclosed by the record proper is not reviewable in any form of proceeding. In Clark v. Commonwealth, the precise question presented here was not before the court. In Commonwealth v. Kryder the attempt was to obtain a review of a decision of the common pleas based on matters outside the record, and the decision in Commonwealth v. Blatt was put upon the ground

that there was no final order.  In the former case it was said:
"No certiorari is effectual to bring up anything but the record,
and no irregularity or defect of power in the court below is
presented."  It was evidently not the intention of the court to
decide that even if a defect of power had been apparent on the
face of the record certiorari would not lie.  And in the latter
case Mr. Justice FELL said: "Until a final disposition of the
case and an order in pursuance thereof, it cannot be the subject
of review by this court."  None of these cases, properly under-
stood, is in conflict with the case of Doyle v. Commonwealth,
107 Pa. 20, where it was held that an order in habeas corpus
discharging the relator from the custody of a deputy sheriff is
a final order or decree which will entitle such officer to remove
the proceedings to the Supreme Court for review upon certiorari.
This is conclusive of the question presented by the motion to
quash.  See also Commonwealth v. Newcomet, 18 Pa. Superior
Ct. 508.

The petition for the writ of habeas corpus alleged that Philip
Wade Smith, the son of Homer C. Smith, aged nineteen years,
was restrained of his liberty by the commandant in charge of
the Marine Barracks at League Island; "the said Philip Wade
Smith having enlisted in the marine service of the government
of the United States without the consent of said Homer C.
Smith, his father."  The officer in command of the Marine
Barracks averred in his return to the writ "that Philip Wade
Smith is so restrained and detained by him lawfully and by
virtue of a lawful enlistment by the said Philip Wade Smith
into the United States Marine Corps."  He also raised the
question of the jurisdiction of the court to grant the prayer of
the petitioner.

Although there has been some difference of opinion as to
the status of the marine corps, it seems to be now generally
held that it is a part of the naval service of the United States:
15 Am. & Eng. Ency. of Law (1st ed.), 467.  This was the
view taken by Chief Justice GIBSON in Commonwealth v.
Gamble, 11 S. & R. 92.  See also Wilkes v. Dinsman, 7 Howard
(U. S.), 89; and the opinion of Judge BROWN of the southern
district of New York in Doyle's Case, 18 Fed. Repr. 369, where
a minor who had enlisted as a marine was sought to be released
on a writ of habeas corpus.  While enlistment in the military

service of a person under the age of twenty-one years, without the written consent of his parents or guardians is prohibited, the acts of congress regulating enlistment in the navy do not expressly require the consent of parents or guardians where the minor is over eighteen·years of age. It may be questioned, therefore, whether upon the facts disclosed in the petition the enlistment of Philip Wade Smith was invalid. But in the view we take of the jurisdictional question raised by the counsel for the United States it is unnecessary to further discuss, or to express a more decided opinion upon, that phase of this case.

The question is whether a state court has jurisdiction upon habeas corpus to inquire into the validity of enlistments into the Marine Corps of the United States and to discharge enlisted men from said service when in the judgment of the court their enlistment had not been made in conformity with the laws of the United States. Prior to the decision of the Supreme Court of the United States in Ableman v. Booth, and United States v. Booth, 21 Howard, 506 (1859), the precedents and decisions of the Pennsylvania courts were to the effect, that the federal courts and the courts of the commonwealth had concurrent jurisdiction in such cases: Commonwealth v. Murray, 4 Binn. 487; Commonwealth v. Barker, 5 Binn. 423; Commonwealth v. Callan, 6 Binn. 255; Commonwealth v. Camac, 1 S. & R. 87; Commonwealth v. Robinson, 1 S. & R. 353; Commonwealth v. Gamble, 11 S. & R. 93; Commonwealth v. Biddle, 4 Clark, 35. In none of the foregoing cases, however, was the question discussed; possibly, because it was supposed, in view of the enunciations in Olmsted's Case, Brightly's Reps. 9 (1809), and Lockington's Case, Brightly's Reps. 269 (1813), that the jurisdiction of the state courts was not open to controversy. In the latter case Chief Justice TILGHMAN said: "It is to be observed that the authority of the state judges, in cases of habeas corpus, emanates from the several states, and not from the United States. In order to destroy their jurisdiction, therefore, it is necessary to show, not that the United States have given them jurisdiction, but that congress possesses and has exercised the power of taking away that jurisdiction, which the states have vested in their judges." He further said: "The inconvenience of clashing opinions between federal and state judges may some times

be felt; but when I consider the situation of a Pennsylvanian imprisoned unlawfully, by color of a pretended authority from the United States, on the banks of the Ohio or the shore of Lake Erie, with only one federal judge to whom he can apply, and that judge in the city of Philadelphia, I feel as little inclination as I have right to surrender the authority of the commonwealth."

The next reported case, in order of time, after the case of Commonwealth v. Biddle, supra, is Commonwealth v. Fox, 7 Pa. 336, decided in 1847. In that case the question of the jurisdiction of the state courts to discharge an enlisted soldier was distinctly raised by the counsel for the United States and was decided in the affirmative. It was held further, that the averment in the return that tne soldier " had deserted and surrendered himself " was immaterial, it not being averred that he was under arrest for the crime of desertion and was to be tried by court-martial. Mr. Justice COULTER who delivered the opinion of the Supreme Court said : " In Pennsylvania, the jurisdiction of state judges and state courts, has not before been doubted ; and from the case of Commonwealth v. Murray, 4 Binn. 487, down to the present term, numerous cases have occurred in which it has been exercised, some of them reported, and many more unreported . . . . If the laws of the United States authorize the detention of the minor, he must be remanded ; but if they do not, he must be discharged."

No later reported decision of our Supreme Court upon this precise question has come to our notice, but in 1863 it was again raised upon a habeas corpus issued by Chief Justice LOWRIE. The case I refer to is Commonwealth v. Wright, 3 Gr. 437. The point actually decided by the chief justice is thus stated in the syllabus : In cases of imprisonment under federal authority, not judicial, the state and federal courts have concurrent jurisdiction. It will be observed that the decision was rendered after the decision of the Supreme Court of the United States in Ableman v. Booth, supra, and while Chief Justice LOWRIE did not intimate that that decision could not be cited in the state courts as a binding authority, even though in conflict with their own previous decisions, he held that it was only binding as to the point actually decided, and that it did not control the case before him. Speaking of certain decisions rendered

in other states taking a different view, he said: "They seem to form their decision on the opinion of the Supreme Court of the United States in the case of Ableman v. Booth, 21 Howard, 506, but that case decides only that a prisoner cannot be taken out of the judicial department of the federal government by means of a habeas corpus issued by a state court. I do not understand the chief justice of the United States (TANEY) to have meant more than this; and if he did, he meant more than the case called for, and all beyond is mere obiter dictum, and cannot be taken by itself as sufficient authority for so important a principle." Substantially the same view was taken by Judge RYON of Schuylkill county in Com. ex rel. Bressler v. Gane, 3 Gr. 447 (1863), by Judge PIERCE of Philadelphia in Commonwealth v. Selfridge, 7 Phila. 76 (1868), and by Judge GRAHAM of Cumberland in Commonwealth v. Blake, 8 Phila. 523, reported in 1871. In Shirk's Case, 3 Gr. 460 (1863), Judge LINN of Centre county held, upon the authority of Ableman v. Booth, that a state court or judge has not power to discharge on habeas corpus from the custody of the provost marshal an enlisted minor under arrest for desertion. These are all the reported Pennsylvania cases called to our attention in which the question for decision appears to have been distinctly raised by an objection to the jurisdiction of the court. All of them were decided prior to the decision of the Supreme Court of the United States in Tarble's Case, 13 Wallace, 397, rendered in 1872.

That case came before the Supreme Court of the United States on writ of error to the Supreme Court of Wisconsin. It appeared that a habeas corpus was issued by a court commissioner of one of the counties of Wisconsin to a recruiting officer of the United States to bring before him a person who had enlisted as a soldier in the army of the United States, and whose discharge was sought on the alleged ground that he was a minor under the age of eighteen years at the time of his enlistment, and that he enlisted without the consent of his father; the petition for the writ alleging that the prisoner had enlisted as a soldier and been mustered into the military service of the national government, and was detained by the officer as such soldier. In the return to the writ the additional fact was alleged, that subsequently he deserted the service, and being retaken, was then

in custody under charges of desertion, awaiting trial by the proper military tribunal. It was insisted on behalf of the United States, that, irrespective of the additional fact alleged in the return, the Supreme Court of Wisconsin erred in affirming the order of the court commissioner discharging Tarble, because, upon the facts disclosed in the petition itself, neither the commissioner nor any other judicial officer of the state had authority to issue the writ of habeas corpus. It is thus seen that the precise question raised in this case was distinctly raised in that case; and that it was as distinctly decided is apparent, not only from Mr. Justice FIELD's statement of the question for decision, and from his reasoning, but also from his statement of the conclusion at which the court arrived: "It follows from the views we have expressed, that the court commissioner of Dane county was without jurisdiction to issue the writ of habeas corpus for the discharge of the prisoner in this case, it appearing, upon the application presented to him for the writ, that the prisoner was held by an officer of the United States, as an enlisted soldier mustered into the military service of the national government; and the same information was imparted to the commissioner by the return officer. The commissioner was, both by the application for the writ and the return to it, apprised that the prisoner was within the dominion and jurisdiction of another government, and that no writ of habeas corpus issued to him could pass over the line which divided the two sovereignties." In view of this decision it is impossible for us to hold that the exclusive jurisdiction of the federal courts is confined to cases of restraint under the judicial authority of the national government. That the state courts " cannot, under any authority conferred by the states, discharge from custody persons held by authority of the courts of the United States, or of commissioners of such courts, or by officers of the general government acting under its laws," (to which class this case belongs), " results from the supremacy of the constitution and laws of the United States:" Mr. Justice HARLAN, in Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. Repr. 734, citing Ableman v. Booth, Tarble's Case, and Robb v. Connolly, 111 U. S. 639, 4 Sup. Ct. Repr. 544. The language used in Ableman v. Booth, was construed by some as applying only to cases where a person is held in custody under the undisputed lawful authority of the United

States, as distinguished from imprisonment under claim and color of such authority. Alluding to this misconception the court said in Tarble's Case and reiterated it in Robb v. Connolly : " All that is meant by the language used is, that the state judge or state court should' proceed no further when it appears, from the application of the party, or the return made, that the prisoner is held by an officer of the United States under what, in truth, purports to be the authority of the United States ; that is, an authority, the validity of which is to be determined by the constitution and laws of the United States. If a party thus held be illegally imprisoned, it is for the courts or judicial officers of the United States, and those courts or officers alone, to grant him release." This would seem logically and necessarily to result from the principle, as enunciated by Chief Justice TANEY, which defines the boundaries of jurisdiction between the judicial tribunals of the states and of the United States. But whatever room for difference of opinion as to the scope and effect of the decision in the Ableman case, there may have been before the Tarble case was decided, we think there is now no room for controversy as to the applicability of the principle to the case of a person enlisted and mustered into the military or naval service of the national government. The suggestion that what was said in the latter case as to the authority of the commissioner to issue the writ was mere obiter dictum cannot be sustained. It was a deliberate judgment upon a question of jurisdiction arising upon the record, and must be so regarded by us until it is reversed by the court that delivered it, or a different ruling as to the scope and effect of the decision is given by our Supreme Court.

The order discharging Philip Wade Smith is reversed and set aside.